### BRIDGER v. ASHEVILLE AND SPARTANBURG RAILROAD COMPANY.

1. Testimony taken by commission without objection may be objected to at the trial on the reading of the interrogatories.

2. A witness personally acquainted with the character and location of a turn-table may testify that it was dangerous for children to ride thereon.

3. Where there is an absence of all testimony as to any or all material points embraced in the issues between the parties, a non-suit should be ordered. If there is any pertinent testimony, whether weak or strong, the force and effect of which has to be weighed, the case must go to the jury.

4. On motion for non-suit, the judge can only determine whether there is any pertinent testimony; on motion for new trial, he may determine its sufficiency. Hence, a judge may grant a new trial to defendant where the same testimony would not permit a non-suit.

5. There being testimony that the turn-table was dangerous, was located in an exposed place, easily accessible, unfenced, unguarded, and unlocked; that the plaintiff was of an age when he could not understand that the turn-table was dangerous, and that he had no right to intermeddle with it—there was some pertinent testimony upon the issue of negligence, and a non-suit was properly refused.

6. The judge declined to charge that "the degree of care required of defendant is only such as is exercised by well regulated railroads over their turn-tables, and that if defendant exercised such care in this case, there was no negligence"—saying that other railroads' negligence could not excuse negligence by this defendant, and that it was for the jury to say whether there was negligence here. In this there was no

error. What well regulated railroads do may be very different from what prudence would require them to do.

7. The judge should charge the jury that negligence is the absence of ordinary care, but the jury must determine whether the facts proved amount to negligence.

8. The judge properly left it to the jury to say whether the plaintiff was of sufficient age, intelligence, and discretion to be brought within the rule of contributory negligence.

9. An infant might know that it was wrong and improper for him to play on a turn-table, and yet not know that it was dangerous.

10. Where the incapacity from age of an infant plaintiff of eleven years is alleged in the complaint and denied in the answer, the judge could not charge, as matter of law, that plaintiff was *sui juris* and subject to the general law applicable to persons of acknowledged capacity.

11. The law of North Carolina, applicable to an injury like the one here received, was not proved by the mere citation of a North Carolina decision declaring the law. The volume of North Carolina Statutes, or of North Carolina Reports, should have been offered in evidence.

12. The charge in this case was not on the facts.

Before COTHRAN, J., Spartanburg, March, 1885.

The case is sufficiently stated in the opinion of this court.

*Messrs. Duncan & Sanders,* for appellant.

*Mr. J. S. R. Thomson,* contra.

April 22, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The plaintiff, a youth under twelve years of age, while playing with other boys on the turntable of the defendant, located in Hendersonville, North Carolina, was badly injured, and he brought the action below through his guardian *ad litem,* in Spartanburg County, for damages, alleging negligence in the defendant, because said turn-table, being located in an open common near the highway, where the boys of the village were accustomed to play, &c., was yet not fenced or guarded, or locked, or secured, when not in use, but was negligently left exposed and accessible to children, who, not knowing the danger, made use of it as a means of amusement.

The jury rendered a verdict of $5,000 in favor of the plaintiff, and judgment being entered the defendant appealed. The

appeal involves, 1st, a question as to the admissibility of certain testimony introduced by the plaintiff; 2d, whether a non-suit moved for by defendant should not have been granted; 3d, in not charging certain requests of the defendant; and, 4th, in charging certain propositions claimed by defendant to have been error.

First. As to the admissibility of the testimony objected to. It seems that certain witnesses were examined by commission, who were asked in said commission if a turn-table was dangerous, no objection being interposed in the commission to this question. These witnesses were examined also generally as to the location of this turn-table, &c., and they stated that it was dangerous for children to ride thereon. It is stated that this testimony was objected to at the trial. Objection overruled. We think the ruling of his honor was correct. The fact that no objection was interposed in the commission would not be sufficient to prevent objection at its opening on the ground that the testimony was already in the case without objection. *McBride* v. *Ellis,* 9 *Rich.,* 269. But besides this, which is satisfactory, the opinion of the witnesses, as given, was not an abstract opinion, founded upon the evidence of facts testified to by other witnesses, and given as the opinion of experts, but it was a statement based upon the witnesses' own knowledge of the character and location of this turn-table, and inferred from the facts to which the witnesses had testified in the course of their examination. That such testimony is generally received by the courts, see *Ward* v. *Charleston City Railway Co.,* 19 *S. C.,* 526; *Seibles* v. *Blackwell,* 1 *McMull.,* 56, and the general doctrine discussed in *Jones* v. *Fuller,* 19 *S. C.,* 66.

2d. Should the motion for non-suit have been granted? The law in reference to non-suits, as we have held in several cases, is this: Where there is an absence of all testimony as to any or to all material points embraced in the issue between the parties, a non-suit should be ordered. *Carrier & Harris* v. *Dorrance,* 19 *S. C.,* 32; *Redding* v. *R. R. Co.,* 3 *Id.,* 9; *Boykin* v. *Watts,* 6 *Id.,* 83; *Holley* v. *Walker,* 7 *Id.,* 144. And this is, or may be, a preliminary question, raised by the defendant before he enters upon his defence, and addressed to the judge. The judge

is charged with the law involved, and it is his duty to determine what are the material points embraced in the issue; in other words, what points the law of the case requires the plaintiff to prove in order to recover.  And while he cannot say whether these points, one or all, have been proved or not on a motion of non-suit, and while he cannot base his order upon such conclusion, yet he can say whether the facts proved or the testimony offered touch the issue; and if in his judgment they fail to touch the issue, or any material point thereof, being as to said issue irrelevant and non-pertinent, it would be proper for him to grant a non-suit.  His judgment in this respect may or not be erroneous, but still it is his province—not final, it is true, but nevertheless his province, subject to review on appeal.  On the other hand, where there is testimony in the case directed and pertinent to the issues involved, and to all material points thereof, whether weak or strong, yet pertinent, the force and effect of which has to be weighed in determining whether said points have been proved, the case must go to the jury, because, under our system of jurisprudence, whether the testimony bearing upon the issue (the facts alleged on the one side and denied on the other) sustains said allegations is a matter with which the jury in a law case is exclusively invested.

It is sometimes urged that if the judge would grant a new trial in a case because a verdict in his opinion could not be sustained by the testimony, a non-suit would be proper before submitting it to the jury.  The law, however, does not say so.  The judge, as we have said, may determine in the first instance the absence of, or pertinency of, testimony, and may instruct the jury as to what is pertinent and what not, but he has no power to determine its sufficiency if it be pertinent, except after the jury has passed upon it; whereas upon a motion for a new trial he, too, may then judge of its force and effect, its sufficiency, and make orders accordingly.  It will be observed that we are not discussing the wisdom of this doctrine. . It may, or not, be well that judges have been denied the province of telling the jury that the evidence, although pertinent, has failed in sufficiency to sustain the allegations in the complaint, and of directing the verdict on the facts.  Much might be said on either side, if this was an open

question, and raised before a legislative assembly, but in our courts it cannot be raised, as the law here has long since settled it, denying to the judges such power.

The question here, then, on the motion of non-suit is, was any pertinent testimony introduced by the plaintiff upon the point involved, to wit, negligence of the defendant? What is negligence? Negligence has been defined, in short, to be "the absence of due care." This is the usual and general definition. More fully explained, it may be said that it "is the omission to do something which a reasonable and prudent man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do under all the circumstances surrounding and characterizing the particular case." There are several classes of cases in which the question of negligence, such as would make the party in default responsible, may arise, some of which are as follows :    1st. Where an injury is inflicted by one upon another by his direct act, or the direct act of his agent.    2d. Where the injury is inflicted by some instrumentality under the immediate control and direction of the party, or his agent, at the time of the injury ; and 3d. Where the injury is inflicted by some instrumentality belonging to the defendant, not, however, at the time under the immediate direction of the defendant or his agent, but the injury is received by the party bringing himself in contact therewith, and in that way sustaining said injury.    Cases of the first class will readily suggest themselves.    Cases of the second may be represented by running a train of cars under the direction of the defendant or his agent.    And cases of the third, by the case before the court, where the plaintiff sustained his injury by going to the turn-table of the defendant when neither the defendant nor his agent was present, and there, of his own accord, attempting to use it as a means of amusement and play.

The question of the pertinency of the testimony offered as to alleged negligence in the two first classes would depend upon very different considerations than when raised in the third, or rather the facts constituting negligence would be of a different character in the third class from those in the two other classes, and the points to which the testimony should be directed, and

therefore its pertinency considered, would be different.  In the third, whether the instrumentality was in itself a dangerous one; whether, being dangerous and capable of inflicting injury, it was located and left in an exposed place, unguarded and unprotected; and especially whether the party injured was mentally incapable of knowing and appreciating the danger, either from want of age or otherwise, and of the impropriety of his intermeddling with it, would all enter into the general question of negligence, and would have to be considered by the judge on the question of the pertinency of testimony arising on a motion of non-suit.  And no doubt the Circuit Judge considered these in this case when he refused the non-suit.  And we concur with him, that there was some testimony on all of these points.  There was testimony that the turn-table was a dangerous machine; that it was left and located in an exposed place, easily accessible, unguarded, unfenced, and unlocked; and that the plaintiff was of that age when he was incapable of understanding that he had no right to meddle with it, or of appreciating his danger.  Whether this testimony was sufficient to sustain these necessary ingredients of the issue, it is not for us to say, nor was it for the Circuit Judge to say. He was compelled to hold that it was at least pertinent, and so holding, he was compelled to say also, let the case go to the jury.

This brings us to the refusals to charge as requested.  The appellant has presented nine (9) exceptions on refusals to charge. No argument, however, was made before us, except upon those numbered 5th, 6th, 7th, 8th, and 9th, we suppose because his honor charged in the main as appellant requested on the others.

In the 5th it is assigned as error, because his honor did not charge "that the degree of care to be required of defendant is only such care as well regulated railroads exercise over their turn-tables; and if defendant exercised such care to this turn-table, then it was not negligent, and the plaintiff cannot recover."  The judge declined this, saying: "I cannot charge that as law, for the reason that all other railroads in the country may have done exactly what this railroad did, and if all others were negligent in doing so, then this railroad would be negligent too; and, further, every railroad must be governed by the circumstances that surround it," &c., and, in substance, that it was for the jury to deter-

mine whether leaving the turn-table without a lock, and unfastened, under all the circumstances, was an act of negligence, &c.   The request called upon him to charge whether a certain state of facts would constitute negligence, to wit : That if this road was doing as other well regulated railroads were doing in this matter, there was no negligence.

Negligence, as we have explained above, in one of its aspects, it is true, is the doing what other prudent and reasonable men would not do when governed by prudence under similar circumstances.  But does it follow that the doing what other prudent and reasonable men are doing under similar circumstances would be proper care, and would negative negligence?  Prudent and reasonable men may sometimes commit an act of negligence, as well as the reckless and imprudent.   Humanity has seldom been found to be perfect, and it would not do to say that a man can shield himself from a negligent act, resulting in injury, by proving that prudent and reasonable men have done the same act.   Such a doctrine could legalize the baldest act of negligence.   Railroads, for instance, running through the streets of crowded cities might establish the practice of going at their utmost speed, regardless of human life.   They might discontinue the custom of ringing the bell at crossings, and dispense with all the safe-guards now adopted to warn persons of danger, and thus change the meaning of negligence altogether.   If the request had been that if the defendant exercised such care as well regulated and prudently managed railroads ought to exercise, such care as proper prudence demanded under the circumstances, then there would be no negligence, no doubt the judge would have so charged.   But as to the request made, we think he properly declined it.

One of the most difficult questions that has come before our court, is this matter of negligence, and we have not been able to get much light from other courts nor from the text writers on some of the points involved.   All agree as to the general definition—the absence of ordinary care.   But who is to say whether the facts alleged and proved show this absence—the judge or the jury?   The judge is required to charge the law, and the jury to find the facts.   The law, however, does not state what facts proved will show the absence of ordinary care.   It could not do

so as applicable to every case which arises.    The cases involving this question are so different in their facts, so various, so complicated, and arising under so many different circumstances, that it would be utterly impossible to lay down any general principle of law, by which every special case could be measured and tested as to the fact of negligence, and which would enable a judge to say to the jury, as matter of law, such and ˙ such facts show the absence or presence of ordinary care.

The general rule on the subject seems to be that the charge of the judge must simply be, that negligence is the absence of ordinary care, and the jury must determine whether the facts proved before them amount to negligence.    They must determine what facts have been proved, and then say by their verdict whether these facts amount to the absence of such care as ordinary and prudent men ought to exercise, when guided by prudence, but not what men may be doing under similar circumstances.    This must of necessity be so, because, as we have said, the law has not, nor can it fix any precise standard which can be given by the judge to the jury and by which the facts in each and every case can be measured and weighed as applicable to the question, whether or not ordinary care was bestowed in the case.    Besides, in many cases, the matter is of common knowledge, and the jury being supposed to be reasonable men, brought into the court from daily contact with the ordinary and usual business of life, can take notice of what ordinary care would require.    In such cases they are supposed to have a standard for ordinary care in their own mind.    In other cases, where the matter pertains to some special business beyond the range of common knowledge and about which the jury cannot be supposed to be informed, what ordinary care and prudence would require in such case may be proved by experts or by other parties who may know.    And, perhaps, in a case of demurrer on the ground that the facts do not constitute a cause of action, the judge would be bound to decide from the standard in his mind.

The next exception assigns error "because his honor did not charge, that if defendant's turn-table was located in a place where persons were not likely to go, then it was not bound to take precautions against possible injury to trespassers."    We think the

judge charged this.   He certainly charged the preceding request
in terms, and that was the same as this, with the phraseology
somewhat different, and after charging the former as law, he said,
this one is included in a former request.

Next.   "Even if defendant was negligent, yet if the plaintiff
by the exercise of ordinary care could have avoided the injury
and did not, then he was the author of his own injury."   His
honor said in reference to this, in substance, that if the jury
found that the plaintiff was possessed of sufficient intelligence and
discretion to bring him within the operation of the rule, where
he could be held responsible for his acts, and capable of contribut-
ing to his injury, then the jury could not find a verdict for him.
And he submitted to the jury whether the plaintiff, whom they
had seen and observed, and in reference to whose capacity they
had heard testimony, was possessed of such capacity, notwith-
standing his tender age of ten years and eleven months.   This, it
seems to us, was as far as the judge could have gone.   He could
not have charged in the language of the request, because that
would have been assuming that the plaintiff was capable of exer-
cising ordinary care, and in that way have avoided the injury,
which was one of the very matters in controversy.

Next, in not charging, "that the plaintiff at the time of the
injury was of sufficient age, intelligence, and capacity to make
him responsible for his acts."   His honor replied to this, that to
charge that would be a clear invasion by the court of the prov-
ince of the jury.   And we concur in that opinion.

The next was very similar to the one just noticed, involving
facts in reference to the capacity of the plaintiff and his contrib-
utory conduct, which his honor properly left to the jury.

The next two present the same idea, and complain that his
honor declined to charge, that if the plaintiff was of sufficient
capacity to know that it was wrong and improper to play upon
the turn-table, especially after being told by his comrades not to
do so, he was guilty of contributory negligence and could not
recover.   The judge charged this, with the slight qualification of
inserting after the words, wrong and improper, the words,
"because it was dangerous."   This, it seems to us, was not such a
modification as to make his charge legal error.   A main ques-

tion in the case was, did the plaintiff have sufficient capacity to contribute to his injury? This question the judge very fairly submitted to the jury, and the insertion of the words above, "because it was dangerous," if not absolutely necessary, was not improper, and could in no way have misled the jury. The plaintiff may have been told, and he may have had sufficient capacity to take in the idea, in a general way, that it was wrong and improper for him to be at the turning-table, and yet not of sufficient capacity to know that he might get hurt by attempting to ride upon it, and consequently not of sufficient capacity to exercise, or be required to exercise, ordinary care, so as to prevent injury. This was one of the points involved in the request, and the judge very properly brought it out, by inserting the words of modification referred to.

The appellant's counsel have earnestly pressed upon us the position, that it was the duty of the Circuit Judge to charge as matter of law under the evidence, that the plaintiff from his age and sprightly character was *sui juris*, and therefore subject to the general law, applicable to those of acknowledged capacity. Where it is admitted that the party injured was of sufficient age, or had sufficient intelligence to be responsible for his acts, we do not say but that the judge might properly charge in such case, that he could contribute to his injury in such way as to exempt the defendant. So, too, where it is admitted that from his tender years or other infirmities he has not sufficient capacity, the judge might charge, that he could not contribute. But where these matters are matters of doubt, and are points in the issue, depending upon facts to be proved, then they become questions for the jury.

In accordance with these principles, we find cases in some of the States, cited by appellant, where the courts have ruled as matter of law in cases of children one, two, and three years of age, that the doctrine of contributory negligence could not be applied. In other cases, where they were eleven, twelve, thirteen, and fourteen, that it could be applied, and in others between these ages, that the jury should first determine the question of capacity, before considering the question of contributory negligence. In the case before the court the incapacity of the plaintiff from age

3

and undeveloped intellect was alleged in the complaint, and denied in the answer.   It thus became one of the facts in issue, and in our opinion it properly belonged to the jury, as it was not so clear, or admitted either way, to such extent   as to warrant the judge, even under the cases relied on by appellant, to charge upon it as matter of law.

Next, in not charging, "that the law of the place which gave rise to the liability must be the law of the case."   Had it been proved, as required by section 2218, General Statutes, that the laws of North Carolina on this matter were different from those of this State, the common law having been altered by statute, or having been modified by the decisions of the highest court in that State, then the defendant, perhaps, could have requested this charge, or at least he could have raised the question whether or not the law of North Carolina should control; but until such testimony was introduced, the question raised was an abstract question and had no application to the facts.   And in that view the charge of the judge would be immaterial.   We do not understand from the statements in the "Case," that either a copy of the statutes of North Carolina, or a volume of the Reports of that State, or any parol testimony was offered as to the law there.   In the argument for non-suit, appellant's counsel read from a case cited, and produced the 74th North Carolina Reports, but this volume had not been offered or admitted in the progress of the trial up to that time, nor do we see that it was either admitted or offered afterwards.   There being no testimony, then, that the law of North Carolina was different from ours, the charge of the judge, even if erroneous, would not call for a reversal of the judgment.

The exceptions not heretofore noticed assign error, in that the judge charged on matters of fact, in saying, "that the turn-table under some circumstances was destructive and dangerous ;" that it was patent and self-evident, that under some circumstances a turn-table was a destructive and dangerous thing; "that it was an alluring and attractive place for boys."   We do not think that these incidental remarks of the judge made in his charge, can be culled out and urged as a violation of the province of the jury.   He did not instruct the jury that, as matter of fact, it had been proved in this case that the turn-table here was a destruc-

tive and dangerous thing. He said, that in some circumstances a turn-table was dangerous. Nor did he charge, as matter of fact, that the turn-table here was an alluring and attractive place for the plaintiff; he said, a turn-table is an alluring and attractive place for boys. The purpose of the constitutional inhibition upon Circuit Judges, from charging on the facts, is to prevent the judge from leading the jury on the facts. Our system demands that the jury shall be left to their own findings, upon the facts, free from the opinion or suggestion of the judge. It can hardly be said that the judge here violated this principle by the incidental and general remarks excepted to.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.