8613

HAYES v. SOUTHERN POWER CO.

1. ELECTRIC COMPANIES—NUISANCE—NEGLIGENCE.—Evidence that an electric company built a house on the premises of a cotton mill for transforming electric power for the mill to which the cotton mill had the key but to which the electric company had free access and in which its agents were at work the day before an infant climbed up to a window left open on that day, reached its hand through the open window and touched the wires on the inside heavily charged with electricity, is sufficient to support a finding of negligence on the part of the electric company.

2. NEGLIGENCE—IBID.—One establishing a dangerous agency at a place where others are liable to be and have the right to be, must use due care in guarding it.

3. IBID.—IBID.—PROXIMATE CAUSE.—Leaving a wire heavily charged with a current of electricity where a child may touch it may be the proximate cause of his injury caused by his touching it.

4. ELECTRIC COMPANIES—NUISANCE—ISSUES.—Whether an open window to a transformer house where live wires are located is an attractive nuisance is for the jury.

5. NUISANCE—NEGLIGENCE.—Maintaining on one's property inticements to the ignorant and unwary is tantamount to an invitation to visit, inspect and enjoy and the duty to protect from the dangers of the place follows as justly as if the invitation had been express.

Before SEASE, J., York, Fall term, 1912.  Affirmed.

Action by Walker Hayes by guardian against Southern Power Company and Manchester Cotton Mills. Defendants appeal.

*Messrs. T. F. McDow, McDonald & McDonald, H. C. Miller* and *Osborne & Cocke,* for appellants. *Messrs. McDonald & McDonald* cite: *Intervening cause:* Cooley on Torts, 99; 24 L. R. A. (N. S.) 978; 64 S. E. R. 106; 24 Am. St. R. 670; Shear. & Rev. on Neg. 53; 1 L. R. A. (N. S.) 822; 43 S. E. 731; 104 S. W. 1128; 24 L. R. A. (N. S.) 978; 31 Id. 1020; 58 L. R. A. 399. *Charge on the facts:* 76 S. C. 49; 78 S. C. 103; 79 S. C. 120; 83 S. C. 56; 87 S. C. 190; 89 S. C. 492, 140; 91 S. C. 203. *Duty to infant trespasser:* 78 S. C. 19; 38 Cyc. 1773-4; 8 Am. St. R. 267.

*Messrs. Dunlap & Dunlap* and *S. E. McFadden,* contra. *Messrs. Dunlap & Dunlap* cite: *As to attractive nuisances:* 78 S. C. 10. *Reckless disregard of another's rights will support punitive damages:* 88 S. C. 7; 73 S. E. 340.

July 14, 1913. The opinion of the Court was delivered by

MR. JUSTICE FRASER. The appellants thus state their case:

"This was an action in the Court of Common Pleas for York county, S. C., to recover the sum of $30,000 damages for alleged injuries to plaintiff, a minor, by coming in contact with electric wires in a transformer house, located on the property of the defendant, the Manchester Mills.

"It is alleged in the complaint that the defendant, Southern Power Company, is a corporation engaged in furnishing electricity to various industries, and, among others, to the Manchester Cotton Mills. That the said Southern Power Company built, or had built, with the permission and consent of the Manchester Cotton Mills, the trans-

former house in question, under an agreement to furnish electric power to said cotton mills. The specific and particular allegations of negligence alleged to have been the proximate cause of the plaintiff's injuries are found in the ninth paragraph of the complaint, and they charge the defendants with separate, joint or concurrent negligence, carelessness, recklessness and wantonness in the following particulars, to wit:

a. "In erecting and allowing to be erected the said transformer house, and installing therein dangerous machinery, appliances, apparatus and electric wires, heavily charged with electricity, and in not providing safe and proper means to protect the public and said infant from the dangers thereof; and the said defendant, Southern Power Company, its agents and servants, knowing that in and around said house children of tender years and ignorant of the dangers of said machinery, apparatus, appliances and electric wires, and being accustomed, did visit and play, being attracted to said house by the said appliances hereinbefore alleged; the said defendant, Southern Power Company, left the doors and windows of said house open and unprotected, thereby giving said children and this infant opportunity to be subjected to said dangerous machinery, apparatus, etc., heretofore alleged; and the Manchester Cotton Mills, its agents, servants and officers, knew, or ought to have known, that said doors and windows were open and unprotected, and knew that the said house contained dangerous machinery, apparatus, etc., heretofore alleged, and that there were children of tender years, including said infant, attending said public school, and that said children, including the said infant, frequently visited and played around and near said house, with the knowledge and acquiescence of both of said defendants.

b. "That the said house and the said danger, apparatus, appliances, etc., heretofore alleged, were under the control and management of the defendants, Southern Power Com-

pany and the Manchester Cotton Mills, the said transformer house and the said schoolhouse on the property of the defendant, the Manchester Cotton Mills and the agents, servants and officers of the said the Manchester Cotton Mills, constantly used said house in getting the electricity to drive and operate its said machinery."

"The answer of the defendant, the Manchester Cotton Mills, consists of: (a) A denial of the material allegations of the complaint; (b) that plaintiff's injuries were caused by his act and negligence; and (c) that he was a trespasser on the premises of the defendant.

"The answer of the defendant, Southern Power Company, contains similar defenses.

"The case was tried at the November, 1912, term of the Court for York county, before Judge Thomas S. Sease, and a jury. At the close of the testimony for the plaintiff, the defendants made a motion for a nonsuit * * * This motion was overruled by the presiding Judge. At the close of all of the testimony, defendants made a motion for the direction of a verdict in their favor, upon the grounds, * * * This motion was also refused by the presiding Judge.

"After hearing the charge of the presiding Judge, the jury found a separate verdict against each of the defendants for the sum of $4,166.67. The defendants thereupon made a motion for a new trial, which was also refused by the presiding Judge. Thereafter, judgment on the separate verdicts was entered against each of the defendants. Due notice of appeal was served, * * *

"The following facts appear to be undisputed in this case: That the plaintiff was severely burned and injured by coming in contact with the electric wires in the transformer house, located on the property of the defendant, the Manchester Mills. At what time this transformer was built, it does not clearly appear from the testimony. It appears that the plaintiff, a little boy, nine years of age, lived on the property of the Manchester Mills, and for several

months had been attending school in a building near the transformer house. During the recess hours, the children were accustomed to play in the neighborhood of the transformer house, sometimes at one place and sometimes at another. It appears that the Manchester Mills were principally in control of the transformer house, although the agents and servants of defendant, Southern Power Company, occasionally visited it for the purpose of making necessary repairs in the electrical apparatus. The transformer house itself is a brick building, having a door and three windows. Across the windows are slats about two and one-half inches wide nailed on at intervals of about two or three inches. The windows each had two sashes with six lights in each sash, of about ten by twelve inches each. The electric power wires were located in this house, near one of the windows, about five or six feet from the ground. These windows were located too high for the plaintiff to come in contact with the wires when standing on the ground.

"The plaintiff and other children had been warned not to go near the transformer house on account of the danger connected therewith.

"There were two panes of glass out of the lower sash of the window where the power wires were located, but this fact had no connection with the injury to plaintiff, as the windows were raised and hence the broken panes of glass were not within reach.

"On the day plaintiff received his injuries, he, with two or three other small boys, at the noon recess, went to the transformer house, and when first seen after his injury, had his knee in the window, and was hanging out by his hand. His hand was through the window touching the wires. In his own account of how he received the injury, the plaintiff stated that the other little boys had told him if he touched the wire it would make him jump and dance.

"As shown by the testimony, therefore, it was necessary that the plaintiff should climb up in the window, place his

hand between the slats and under the window before he could touch the wires, or come in contact with them. This seems to be the only manner in which his injury could have been received, according to the undisputed testimony.

"The exceptions raise five issues of law for the determination of this Court, to wit:

1. "That there was error on the part of his Honor in refusing to grant a nonsuit as to both defendants, and especially as to the defendant, Southern Power Company.

2. "That there was error on the part of his Honor in refusing to allow defendants to introduce certain testimony.

3. "That there was error on the part of his Honor in refusing to direct a verdict in favor of both defendants, and especially as to the defendant, Southern Power Company."

1. The second issue is withdrawn in the argument. The first and third cover the same ground and present really only one issue, to wit, was there evidence of negligence and was there evidence of negligence as to both defendants?

Appellants claim there is certainly no evidence of negligence as to the appellant, the Southern Power Company. The appellants have made common cause in this Court and both maintain that position, and yet, the appellant, the Manchester Cotton Mills, in its answer, "allege that the transformer house mentioned in the complaint was erected by its codefendant, Southern Power Company, and was at the time of plaintiff's injury under its exclusive control and management."

However that may be, there was evidence to show that the transformer house was on the property of the Manchester Cotton Mills and it there received its power, and that keys were in the possession of its employee; that the agents of the Southern Power Company had access to the building and worked in there one whole day, and that the day after that, the window was open and that its employees constantly entered it on corporate business.

The negligence, if any, was the open window with unprotected wires charged with electricity within five or six inches of the open window. The undisputed testimony was that the children constantly played near the window. Home base was quite near. There was a dispute as to whether the plaintiff had ever been warned or not. The teacher did not claim to have warned the plaintiff about the deadly wires, but about the house. The house, or the near-by pole, was home base, used daily by little children, from six to twelve years of age. There was no fence or stake or line to mark the boundary line that must not be crossed. All the buildings were located on the property of the Manchester Cotton Mills.

2. There is no dispute that the plaintiff had the right to enter upon the property to attend school. If the permission was limited, then the limits must be defined before the licensee becomes a trespasser.

It is hardly necessary to cite authority to show that if a man establishes a dangerous agency where people are likely to be found, it must be guarded. If his Honor referred to "social duty and the ordinary offices of humanity" instead of the law of the State, the appellant cannot complain if the State law required the same thing, and it does.

3. The appellant claims that even if there was negligence, still the negligence was not the proximate cause, because there was an intervening cause when the plaintiff took hold of the wire, and without that, the injury would not have occurred. The authorities cited are not binding nor are they good law. A live wire stretched across the schoolhouse door would do no harm unless the plaintiff had supplied the intervening cause of coming in contact with it. The jury in this case have vindicated their intelligence and freedom from passion when they found only actual damages for inadvertence. They seemed to have come to the conclusion that all parties who were

charged with the high and responsible duty of protecting their little children from so dangerous a thing as an undiminished and unprotected current and its deadly and dreadful consequences, were simply asleep at their posts and did not wilfully sacrifice this plaintiff to sordid gain.

4. Whether this was an attractive nuisance or not was a question for the jury. There was evidence that the plaintiff had been told that if he would take hold of the wires, he would see things that were interesting to see, and the jury might have inferred from that, that the open window presented an attractive nuisance.

5. The twelfth and thirteenth exceptions are as follows: 12. "Because his Honor erred in charging the defendants' third request, which was as follows: 'The jury is charged that to maintain upon one's property enticements to the ignorant and unwary is tantamount to an invitation to visit and inspect and enjoy, and in such cases the obligation to endeavor to protect from the dangers of the seductive instrument or place follows as justly as though the invitation had been express,' the error being: (a) That such charge was not applicable to any of the testimony in the case; (b) that such charge was a charge on the facts in violation of the Constitution of this State, inasmuch as it instructed the jury as to the weight of the testimony, and as to what inference should be drawn from the facts stated in such request to charge.

13. "Because his Honor erred in charging the jury as follows: 'It is true an infant may be a trespasser, that is an infant of tender years, in a technical sense, when it goes where it has no rightful permission or authority to be, but the same rule does not apply to infants as to adult trespassers. An infant *non sui juris* cannot be such a trespasser as would exempt any one from the duty of exercising ordinary care to avoid doing him an injury. And in this connection I desire to read a few paragraphs from another case by the Supreme Court of the State, and that

is as follows: Under the caption of "Liability for Injuries to Chldren," the author thus speaks in strenuous language of the doctrine that liability extends only to wanton injuries.' 1 Thomp. on Neg., sec. 1026. 'One doctrine under this head is that if a child trespass upon the premises of the defendant and is injured in consequence of something that befalls him while so trespassing, he cannot recover damages unless the injury was wantonly inflicted, or was due to the reckless, careless conduct of the defendant.' That is quoted from the eminent, distinguished author. The Supreme Court says: 'This cruel and wicked doctrine, unworthy of a civilized jurisprudence, puts property above humanity, leaves entirely out of view the tender years and infirmity of understanding of the child, indeed his liability to be a trespasser in sound legal theory, and visits upon him the consequences of his trespass just as though he were an adult and exonerates the person upon whose property he is a trespasser from any duty towards him which they would not owe under the same circumstances toward an adult.' Quoting from this same decision, 'Children, wherever they go must be expected to act upon childish instincts and impulses and others who are chargeable with a duty of care and caution towards them must calculate upon this and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which in their immature judgment might naturally suppose that they were at liberty to handle or play with, they should expect that liberty to be taken,' the error being: (a) That such charge was not a correct statement of the law as to infant trespassers, inasmuch as the defendants would be exempt from liability to an infant trespasser in the same manner and to the same extent as they would be to adult trespassers, if they were not guilty of negligence, and the injury to the infant trespasser was the result of his own act; (b) that it was error to read to the jury under the circumstances

extracts from a decision of the Supreme Court wherein was quoted the opinion of the author of Thompson on Negligence, because such quotation of Thompson on Negligence was *obiter dictum,* and at most was quoted by the Supreme Court in said case more by way of illustration than as a binding authority upon the issue raised in that case, which arose upon demurrer to the complaint therein; (c) that it was error to state to the jury that the Supreme Court in said case had characterized the law as laid down by many text writers and announced by many of the Courts of this country as a 'cruel and wicked doctrine unworthy of civilized jurisprudence' and 'puts property above humanity,' as this Court had never delivered any such utterance, and the language used was that of a text writer, and as used in the case in question was *obiter dictum.*"

These exceptions cannot be sustained.

The charges were taken from the case of *Franks* v. *Southern Cotton Oil Co.,* 78 S. C., page 10, 58 S. E. 960, 12 L. R. A. (N. S.) 468, and this Court cites these authorities with approval.

The fourteenth exception complains of error in refusing a new trial. What has already been said covers this exception and is overruled.

The judgment appealed from is affirmed.