### 9818

#### McLENDON v. HAMPTON COTTON MILLS.

#### (95 S. E. 781.)

1. Negligence— Proximate Cause.—Negligence in having defective places in a fence around a reservoir could not be the proximate cause of drowning of a child who climbed over it where it was in good condition.

2. Negligence—Places Attractive to Children.—The purpose of the rule that dangerous places attractive to children should be guarded is to save the child of ordinary normal instincts and training, and safeguards need not be such that an abnormally mischievous and disobedient child could not overcome them.

3. Negligence—Places Attractive to Children.—A mill company maintaining a four-foot woven wire fence around a reservoir, though easy to climb, maintaining a sufficient safeguard, and was not liable for the death by drowning of six-year-old child who climbed over the fence.

Before DeVore, J., Richland, Summer term, 1917. Reversed.

Action by H. C. McLendon, as administrator of the estate of Victor McLendon, deceased, against the Hampton Cot-

ton Mills Company. Judgment for plaintiff, and defendant appeals.

. *Messrs. Haynsworth & Haynsworth, R. B. Herbert* and *William Elliott,* for appellant, cite: *As to error in not directing nonsuit on the ground that there was no evidence of negligence on the part of defendant:* 6 Am. Negligence Rep., p. 74; 25 S. C. 29; 78 S. C. 10; 56 Am. St. Rep. 106; 150 U. S. 262; 14 Supreme Court 619; 38 L. Ed. 434; 154 Ill. 141; 30 N. E. 484; 27 L. R. A. 206; 45 Am. St. Rep. 114; 90 S. E. 445; 154 Pacific 442; 60 Kansas 217; 56 Pacific 4; 44 L. R. A. 655; 54 L. R. A. 284; 95 S. C. 230; 113 Ga. 398; 39 S. E. 82; 54 L. R. A. 314; 73 Minn. 53; 75 N. W. 735; 42 L. R. A. 288; 72 Am. St. Rep. 597; 134 Mo. 641; 36 S. W. 659; 33 L. R. A. 755; 56 Am. St. Rep. 543; 91 Tex. 60; 30 L. R. A. 573; 41 S. W. 62; 66 Am. St. Rep. 856; 45 Neb. 467; 63 N. W. 915, 129, 395; 111 S. W. 712; 18 L. R. A. (N. S.) 179; 130 Am. St. Rep. 469; 38 Wash. 331; 107 Am. St. Rep. 847; 80 Pac. 537; 115 Cal. 345; 47 Pac. 113, 598; 56 Am. St. Rep. 106; 100 Pac. 441; 159 Wis. 83; 49 N. W. 760; 27 App. Cases (D. C.) 154; 5 L. R. A. (N. S.) 263; 7 Ann. Cases 195; 115 Cal. 345; 47 Pac. 113, 598; 56 Am. St. Rep. 106; 105 Miss. 636; 63 South. 185; 47 L. R. A. (N. S.) 1101; 73 Minn. 53; 75 N. W. 735; 42 L. R. A. 288; 72 Am. St. Rep. 597; 154 Ill. 141; 39 N. E. 484; 27 L. R. A. 206; 45 Am. St. Rep. 114; 29 Cyc. 464; 131 Mich. 571; 92 N. W. 38; 7 Miso. (N. Y.) 272; 27 N. Y. Suppl. 891. *As to charging jury that it was the duty of defendant to safeguard reservoir in such a way that it would be a protection against causing injury or damage to children:* 154 Pac. Rep. 141; 90 S. E. 943; 25 S. C. 24. *As to refusal to allow testimony as to what like companies did with like reservoirs:* 104 Ams. Stat. Reports 665; 107 U. S. 545; 16 L. R. A. (N. S.) 128; 27 L. R. A. (N. S.) 181; Wigmore on Evidence, sec. 461.

*Messrs. Whiting & Baker,* for plaintiff-respondent, cite: *As to refusal to grant nonsuit:* 90 S. C. 417; 104 S. C. 30;

98 S. C. 129; 95 S. C. 230-236; 78 S. C. 10; 18 Am. St. Rep. 393; 168 N. C. 229; 84 S. E. 388; L. R. A. 1915d, 850; Chamberlain on the Modern Law of Evidence 3152-3209; 29 Am. St. Rep. 534; 57 Am. St. Rep. 897; 65 Mo. 502; 22 Am. St. Rep. 172; 92 Am. Dec. 601-605; 200 Ill. 425; 6 N. E. 1086; 73 N. E. 787; 60 S. C. 168; 61 S. C. 488; 67 S. C. 194; 74 S. C. 142; 98 S. C. 130; 76 S. C. 287; 25 S. C. 24, 31; 69 C. C. A. 545; Abbott's Mode of Proving Facts, pp. 204, 205; 25 C. C. A. 225; 23 L. Ed. 362; 30 Am. St. Rep. 500; 20 Am. St. Rep. 39; 57 Am. St. Rep. 898

October 10, 1917.

The opinion of the Court was delivered by Mr. Justice Hydrick.

Defendant appeals from judgment for plaintiff for $5,000 damages for the death of plaintiff's infant son by drowning in a reservoir built by defendant for the storage of water used in the operation of its cotton mill.

Plaintiff was an employee of defendant, and resided in the mill village several hundred yards from the reservoir. In August, 1915, his little boy, Victor, who was six years and ten months old, and several other boys were passing the reservoir, when Victor proposed to them that they climb over the fence surrounding it and go in wading. They did so, and Victor stepped into a deep place and was drowned.

The liability of defendant is put upon the ground that the reservoir was not properly safeguarded. There is no dispute about the material facts. The reservoir was surrounded by a fence, between four and five feet high, built of farm wire, with meshes about three inches in size at the bottom and increasing in size to the top. It had a wide plank for a baseboard and a 2x4 scantling for a top rail. It stood on the top of a sloping embankment six or eight feet high, which made the retaining wall of the reservoir. It was easy for a boy of Victor's age to approach and climp over the fence. But it was generally understood by the children of

the village that they were not allowed to go inside the inclosure; and, while there were occasional violations of this prohibition, whenever children were seen inside the fence they were driven out by the company's watchman, who was also the village policeman, or by other employees who saw them. About three weeks before the accident, plaintiff saw some boys in there fishing, and took the occasion to warn Victor never to go in there.

There was testimony that the wire had been broken loose from one of the posts and pulled down so as to make it easier to get over the fence at that place, and that there was a hole in the bottom of the fence at another place large enough for a boy to get through, and that the gate, which was usually kept shut and fastened, was occasionally found open. But, conceding negligence in these respects, it cannot affect the decision, for it was not the cause of the injury, since the undisputed evidence is that the boys climbed over the fence where it was in good condition.

The question is not whether defendant should have provided a reasonably sufficient safeguard against the probability of injury resulting to children of the village who were too young to understand and appreciate the danger of going into or about the reservoir. That question was thoroughly considered and settled by the decision of this Court in *Franks v. Cotton Oil Co.*, 78 S. C. 10, 58 S. C. 960, 12 L. R. A. (N. S.) 468, and the principle there announced has been followed in several subsequent cases. *Hayes v. Power . Co.*, 95 S. C. 230, 78 S. E. 956; *Tucker v. Cotton Mills*, 95 S. C. 302, 78 S. E. 890, and 96 S. C. 466, 81 S. E. 182.

In the Franks and Tucker cases, children were drowned in reservoirs which were not fenced at all. In the Hayes case, the Court considered the question of properly safeguarding against a much greater danger—wires carrying a deadly current of electricity which were easily reached by the injured boy through a window in the transformer house

16—109.

which had been negligently left open.   It is not necessary now to decide whether the rule of the Franks and Tucker cases, which was applied in thickly settled communities, should or will be extended to artificial bodies of water created in sparsely settled communities.   For what is and what is not negligence depends so much upon the circumstances that no inflexible rule can be laid down by which all cases may be determined.

As pointed out in the opinion in the Franks case, the rule there adopted is an exception to the general rule applicable to adult trespassers.   It is based upon the just and humane principle that one who creates upon his own premises a thing which is naturally attractive to children and at the same time dangerous to them, or which, although it may not be especially attractive to them, yet if left exposed where they are likely to come in contact with it, and their doing so is fraught with obvious danger to them, should anticipate their childish proclivities and exercise reasonable care to safeguard them from injury that otherwise would probably result.   The exception is made in favor of children of tender years, because they are presumed to be incapable of understanding and appreciating the dangers into which they are led by their childish instincts.

But though this rule is just and humane, it should not be applied so as to impose unreasonable burdens or liabilities upon the owner or occupier of land in such cases.   It does not make him an insurer of the safety of his neighbors' trespassing children.   He is not bound to make their trespasses or their injury impossible.   If he takes such measures or precaution as an ordinarily prudent person should take under the circumstances, and such as ought to be sufficient to prevent injury to children of normal instincts, proclivities, and training, he satisfies the requirements of the law.   There are some children in nearly every community who are abnormally mischievous and disobedient, who not only defy parental authority, but public authority as well, and set at

naught all reasonable rules and regulations, and seek to overcome every obstacle to the accomplishment of their wilful purposes.    But the purpose of the rule is to save the child of ordinary and normal instincts and training from the consequences of that inadvertence or thoughtlessness which is natural to childhood.    Therefore the landowner is not bound to erect a barrier which no child can overcome, but only such as is sufficient to safeguard the child of ordinary and normal instincts, habits and training.    No Court would hold that a boy who broke the lock with which a turntable was locked and rode on it to his injury could recover damages of the railroad company, because the lock was not such that he could not have broken it.

The fence erected by defendant in this case was sufficient to safeguard the average normal child of the mill village against the danger of the reservoir.    It kept them out, although it was easy for them to climb over a fence one, two, three, or four feet higher.    But to hold that the fence must have been such that a boy could not climb over it would be to impose upon defendant the duty of extraordinary care and the liability of an insurer; and no Court has yet extended the rule further than to require ordinary precautions to prevent injury in such cases.

Defendant's motion for nonsuit should have been granted. This view makes it unnecessary to consider the other grounds of appeal.

Judgment reversed.

Mr. Chief Justice Gary and Mr. Justice Fraser concur in the opinion of the Court.

Mr. Justice Gage *dissenting*.    I cannot agree with the majority opinion, and my conviction is so strong that I have a mind to set down my views.

The child in issue was not yet seven years old when he met his death.    He was, therefore, incapable of crime, even, much less, of negligence and wantonness, and he was also

incapable of observing danger.    There is no evidence that he was headstrong, and, if he was, his tender years saved him from censure on that ground.

His father was at work in the mill; the place the defendant wanted him to be.    By the laws of the State, wisely enacted, the child could not be in the mill.    The child's mother was at the time of the tragedy nursing a sick neighbor woman, and she had her three children there with her; the deceased at first being amongst them.

The world knows, and so do the Courts, that a body of water is alluring to children.    We have held that in communities like the instant one reservoirs of water ought to be reasonably protected by the owners against harm to children. The fence around the reservoir in issue was not such a reasonable safeguard that the Court was able to say so; it was of doubtful character.    If a safeguard, it was because the fence was notice to the child or a hindrance to the child; in no other respect could it be a safeguard. · To a child of six years it was no notice at all; the child would not know what the fence was put there for, except perhaps a thing to play upon.    To a child six years old it was no hindrance; it was rather an invitation to climb; it was made of woven wire.

The fence was a compliance with the letter of the law, but not at all with its spirit; no witness definitely put it as high as five feet though it was suceptible of exact measurement; no witness for the defense fixed its height at all; the witnesses said it was easy to climb.    More than that, the character of the fence and the condition of it evidences the attitude of the mill company towards it as a reasonably sufficient safeguard.    Some witnesses said the fence had holes in it; some said that it was somewhat let down at the top; some that the gate to it was only tied and was sometimes open, none said it was locked; some said calves were sometimes pastured in it by the company's permission; the reservoir was right across from the company's office, and the place of the accident might have been seen from the office; children

had been seen within the fence before, and had been run out ; there was a gangplank running from it's wall into the reservoir basin and over the water, for what purpose it was not disclosed but easy to surmise.

These circumstances were a sufficient warrant for the Court to have submitted to the jury whether or not the protection of the reservoir was reasonably safe and intended to be so, or whether it was constructed and maintained as a purely formal compliance with law.

MR. JUSTIRE WATTS concurs in the dissenting opinion of MR. JUSTICE GAGE.