GROVER C. MATHENY, ADMINISTRATOR OF THE ESTATE OF JOHNNY MATHENY, DECEASED v. STONECUTTER MILLS CORPORATION
AND
CLYDE ERWIN, ADMINISTRATOR OF THE ESTATE OF ALBERT SANFORD ERWIN, v. STONECUTTER MILLS CORPORATION.

(Filed 25 February, 1959.)

1. **Negligence § 4a—**

It is not negligence *per se* for the owner of land to maintain a pond, pool, lake or reservoir thereon.

2. **Negligence § 4b—**

Where the owner of land has knowledge, actual or constructive, that children of tender years are in the habit of playing on his premises, it becomes his duty to exercise ordinary care to provide reasonably adequate protection against their injury, the standard of care being that care which a man of ordinary prudence would exercise under such circumstances.

3. **Same—**

The owner of land, even though he has knowledge that children of tender years are in the habit of playing thereon, is not under duty to render trespass by them impossible, but is required to take only such precautions, by way of erecting guards, fences or other means, as are reasonably sufficient to prevent trespassing by them, and he may not be held liable as an insurer of their safety.

4. **Same— Evidence held insufficient to show negligent failure of owner of land to exercise due care to prevent injury to trespassing children.**

Evidence tending to show that defendant maintained in good condition, around a reservoir on its premises, a metal fence of small mesh,

topped by strands of barbed wire, some seven feet high in all, that a hole found under the fence was closed prior to the injury, and that trespassers at the reservoir could not be readily seen by defendant's employees, *is held* insufficient to be submitted to the jury in an action to recover for the wrongful deaths of two children, nine and ten years of age, found drowned in the reservoir, notwithstanding evidence that children habitually played at the reservoir, that vines had been permitted to grow on the fence and that trees had been allowed to stand near it.

**5. Appeal and Error § 41—**

The exclusion of evidence will not be held prejudicial on appeal from judgment as of nonsuit when the excluded evidence is merely cumulative and could not have affected the decision.

WINBORNE, C. J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Huskins, J.,* at September Term, 1958, of RUTHERFORD.

These actions were instituted for the alleged wrongful deaths on 22 May, 1957, of plaintiffs' intestates, Johnny Matheny and Albert Sanford Erwin, children ten and nine years of age, respectively. The actions were consolidated for trial.

The stipulation and plaintiffs' evidence tend to show the following facts:

The plaintiffs' intestates came to their deaths by drowning in an industrial reservoir located on defendant's property. The reservoir is near Dallas and Oak Streets in the town of Spindale. Defendant has industrial buildings facing two sides of the reservoir. These buildings have vents (no windows) toward the reservoir. Defendant's office is some distance away. Duke Power Company owns property on the third approach to the reservoir and has transformers thereon enclosed by a fence. On the fourth approach are dwellings fronting on Dallas Street. The reservoir is about 100 feet to the rear of these dwellings. Beyond the Duke Power Company property is a church and church property, including a recreation hall. A public school is nearby.

The reservoir is of concrete. The ends are perpendicular and the sides slope at an angle of 45 degrees. The water level is about three to four feet below the top or ground level of the reservoir. The water is murky, slimy, and has boards and debris floating thereon. The bottom is covered with boxes, limbs and debris. There are fish, frogs and tadpoles in the reservoir. The sides, both above and below the water level, are slick and slimy. Once in the water, a person cannot get out without assistance.

The reservoir is enclosed with a steel mesh fence six feet high on metal posts. The fence is about six to seven feet from the edge of the reservoir. On top of the fence are three strands of barbed wire on steel arms at an angle inward. The overall height of the fence is seven feet. The mesh of the fence is such that fingers may be inserted therein, but is not large enough to admit a hand or foot. The fence has no gate and completely encloses the reservoir. The fence is in good condition.

The fence is covered with honeysuckle vines, and at one place there is a grape vine. At two points there are trees or saplings, about three inches in circumference, inside the fence, with limbs extending through and over the fence. At a point near one of these trees a fence of Duke Power Company, about three to four feet high, connects with or comes near to the reservoir fence. Inside the reservoir enclosure weeds, grass, briars and vines cover the ground about knee deep and grow down to the edge of the reservoir.

The fence, enclosure and reservoir were generally in the condition described for many years prior to 22 May, 1957.

Children going to and from the recreation hall and school took a "short cut" as evidenced by a path in the grass within 100 feet of the reservoir. For many years, in the spring and summer children frequented the reservoir to fish, catch frogs and tadpoles, swim and play. This continued up to 22 May, 1957. They usually gained admission by climbing to the top of the Duke Power Company fence and from there to the top of the reservoir fence, with the assistance of vines and limbs. A path was worn in the grass up to this point in the reservoir fence, and the vines on the fence were worn. Occasionally the fence was scaled at a point where the other tree was located. On other occasions entrance was made under the fence at still another point. Entrance was made between the wire and planking below the fence. One person would press the wire upward and aside while another crawled under. It was possible for a person to get under the fence unassisted. It was preferable to go over the fence because "you wouldn't tear your clothes as easy." At another point there was a hole under the fence previously, but it was "patched up" before May, 1957.

About eleven years prior to May, 1957, an official of defendant corporation was notified that boys were fishing in the reservoir.

It does not appear from the evidence how or under what circumstances plaintiffs' intestates entered the reservoir. They lived about two and one-half blocks away and their bodies were found submerged in the reservoir.

19 — 249

The instant actions were instituted upon the theory that plaintiffs' intestates were drowned because of the actionable negligence of defendant in maintaining an attractive nuisance that lured these and other children, to the actual or constructive knowledge of defendant, and in failing to remove vines and trees from the fence, rid the enclosure of vines, briars and weeds, and drain and clear the pool.

When plaintiffs rested their cases, defendant moved for judgment as in case of nonsuit. The motion was allowed. From the judgment predicated on this ruling, plaintiffs appealed, assigning errors.

*Hamrick & Hamrick for plaintiffs, appellants.*

*Harkins, Van Winkle, Walton & Buck and Hamrick & Jones for defendant, appellee.*

MOORE, J. "The overwhelming weight of authority in this country is to the effect that ponds, pools, lakes, streams, reservoirs, and other bodies of water, do not *per se* constitute attractive nuisances. 56 Am. Jur., Water, Section 436, p. 850. 'The attractive nuisance doctrine generally is not applicable to bodies of water, artificial as well as natural, in the absence of some unusual condition or artificial feature other than the mere water and its location,' 65 C.J.S., Negligence, Sec. 29 (12) j, p. 475. It is, therefore, not negligence *per se* to maintain (even) an unenclosed pond, pool, lake, or reservoir on one's premises." *Fitch v. Selwyn Village,* 234 N.C. 632, 68 S.E. 2d 255, and cases there cited. This principle was quoted with approval in *Stribbling v. Lamm,* 239 N.C. 529, 80 S.E. 2d 270.

A person has the right to maintain even an unenclosed pond or pool on his premises, and it is not negligence *per se* to do so. "When, however, he exercises this right and children of tender years are attracted thereto and it becomes a common resort of persons of tender years to which they go to play, and it appears that the owner knows or by the exercise of ordinary care should know that it is being so used, then it becomes his duty to exercise ordinary care to provide reasonably adequate protection against injury. Failure so to do constitutes an act of negligence. Proximate cause is for the jury." *Barlow v. Gurney,* 224 N.C. 223, 29 S.E. 2d 681, and cases there cited.

The most satisfactory theory as applied to cases such as the one under consideration is that the landowner's liability rests upon the general legal standard of social conduct, i.e., due care under the circumstances. The owner or occupier of land must use such care as a man of ordinary prudence would use under the circumstances to prevent injury to others because of the dangerous condition of his premi-

ses when such condition is known, or should have been known, to him, and may be remedied and guarded against readily with reasonable cost, when the presence of other persons and their exposure to such hurt may be reasonably anticipated. 26 N.C.L. Rev., 228, and cases there cited.

No one is an insurer of the safety of children merely because he is the owner of places that may appeal to their youthful fancies. It is required only that he take reasonable precautions to prevent injury to them. He is not bound to make a trespass by or injury to children impossible. All that is required of him is to take such precautions, by way of erecting guards, providing fences or furnishing other means, as are reasonably sufficient to prevent trespassing by children. He need not take precautions against every conceivable danger to which an irrepressible spirit of adventure may lead a child. There is no duty to take precautions where to do so would be impracticable or unreasonable. The duty to safeguard against the danger is subject to the qualification that it can be done without serious inconvenience and without great expense to the owner. 38 Am. Jur. Negligence, Sec. 147, p. 812.

*McMillin v. Stockyards,* 179 Ky. 140, 200 S.W. 328, is a case in point. The defendant maintained a cattle dip containing water and chemicals. The dip was enclosed by a solid fence, but the gate thereto was sometimes left open. A six-year old boy entered through the open gate and came to his death by falling into the dip. Boys in the neighborhood habitually played around the dip but were ordered away when seen there. There was judgment for the defendant. Speaking to the subject the Court said: "The owner need not keep gates that are on his inclosed premises continually locked, and need not build his fence so high that no person can climb over it; nor is he required to have servants continually on the lookout for trespassing children. He need only exercise reasonable care, considering all of the surrounding conditions and circumstances. . . ."

Plaintiffs cite *Starling v. Cotton Mills,* 168 N.C. 229, 84 S.E. 2d 388, and *Price v. Water Co.,* 50 P. 450, in support of their position. But in the former case defendant had allowed its fence to rot in places with openings large enough to admit the passage of children; and in the latter case there was a kind of stile over the fence.

In the instant case the defendant erected a reasonable safeguard— a metal fence of small mesh, topped by three strands of barbed wire —in all seven feet high. There was no gate. The fence was kept in good condition. It was difficult to furrow under and to climb over. A hole found under the fence was "patched up" before the time in ques-

tion. There were no windows in defendant's buildings facing the reservoir. The office was some distance away. Trespassers at the reservoir could not be readily seen by defendant's employees. Defendant was under no duty to place a watchman at the reservoir or to keep the enclosure within the fence as befits a lawn. We think the trial court was correct in granting the motions for judgment as in case of nonsuit.

The appellants' brief brings forward a number of assignments of error with respect to testimony excluded upon the trial. These have been carefully examined. Had such testimony been allowed, it would have been merely cumulative and could not have affected the decision on this appeal. The other assignments of error are merely academic in this case in view of the decision herein.

The judgment of nonsuit is

Affirmed.

WINBORNE, C. J., took no part in the consideration or decision of this case.