Alton Richard MILLER, Administrator of the Estate of John William Perry, Plaintiff,

v.

Thomas B. PERRY, Defendant.

Civ. A. No. 69–500.

United States District Court,
D. South Carolina,
Greenwood Division.

Jan. 26, 1970.

R. A. Hightower, of Blease, Griffith & Stone, Newberry, S. C., for plaintiff.

Thomas H. Pope, of Pope & Schumpert, Newberry, S. C., for defendant.

HEMPHILL, District Judge.

On August 29, 1969, defendant filed Notice of Motion for Summary Judgment in accordance with the provisions of Rule 56(b) and (c) of the Federal Rules of Civil Procedure on the ground that there exists no genuine issue of fact between the parties and that defendant is entitled to such relief as a matter of law. The Notice recited that the motion would be based upon the pleadings, the depositions, the answers to defendant's interrogatories, the answers to plaintiff's interrogatories and the affidavits of the defendant Thomas B. Perry and of Nancy Amick, Joseph H. Bishop and Catherine Amick and such other affidavits as might be obtained prior to the hearing.

Plaintiff seeks damages allegedly resulting from the wrongful death of John William Perry. The complaint was filed May 28, 1969. The sole statutory beneficiaries of the deceased child are parents William Dalton Perry and Mattie Ladora Perry. Defendant's answer sets up three defenses: (1) a general denial, (2) the sole negligence of the mother and father as statutory beneficiaries, and (3) that the negligence of each parent contributed proximately to the alleged wrongful death of plaintiff's intestate and bars *pro tanto* such portion of any recovery as would otherwise inure to either of them as statutory beneficiaries.

Both parties have pursued discovery, so that the file contains information as to all the facts. Initially there arose some objections to interrogatories, but differences thereabout were resolved. As a result the court has an excellent

factual survey before it. The undisputed facts deserve inclusion here.

In 1961, defendant commenced the construction of a small fish pond on his farm; he later constructed a second small pond nearby and completed both ponds in 1962. They were designed exclusively for fishing, one being less than an acre in size and the other being about one and one-half acres.

Perry's land lies about a quarter of a mile from a paved secondary road known as the Hartford Road, and access is had to his farm by a small dirt road built by his predecessors in title and serving only his farm. The road or lane leads from the Hartford Road between property owned by J. C. Nichols on the south and Joe Bishop's land on the north; both Nichols's and Bishop's lands are enclosed by fences. At the time of the accident, June 6, 1968, Mr. Perry maintained a chain across the private road, at a distance of approximately fifteen yards from the Hartford Road. In addition, he had posted his lands with "No Trespassing" signs and his entire tract was fenced by a three-strand barbed wire fence except across the private lane which, as stated, was blocked by a chain. There was no gate.

The two ponds of Mr. Perry are approximately four-tenths of a mile from the Hartford Road and are not visible from the public highway.

John William Perry was born July 24, 1962. He was one of three children of William Dalton Perry and his wife, Mattie Ladora Perry. The other children were Roger Wayne Perry, born in November 1959, and Ernest Dwight Perry, born February 4, 1961. Mr. and Mrs. Perry moved from Saluda County to Newberry County in April 1967, and live approximately eight and one-half miles from the City of Newberry, about a mile from Bush River and about a mile and a half from Saluda River. They live on a lot containing 1.65 acres, located on the Hartford Road about .4 of a mile south of the private road leading to the defendant's farm. Mr. William D. Perry testified that the closest part of his property was approximately three quarters of a mile from the nearest point of the defendant Thomas B. Perry's property and that it was separated by property owned by J. C. Nichols.

Neither Mr. William Perry nor his wife knew that defendant had any fish ponds in the neighborhood. Mr. William Perry testified that he had whipped his children three or four times for leaving his premises and that generally they stayed home pretty well. Mrs. Perry testified that she had forbidden the children from going into the woods behind her house unless she was with them.

Mrs. Perry testified that she got her children out of the Hartford Road about ten minutes after two and that they had been missing about twenty minutes when her husband got home from work. Mr. Perry went out and called them and when he got no answer, went looking for his boys. He walked back through the woods near a wigwam which they had built on the J. C. Nichols property and he kept calling until he heard his second son screaming. He was still on Mr. Nichols's property when he heard his son. The three boys had gone to the pond and had tried to get into a boat. Only the middle son, Ernest, was able to do so and the other two children were drowned.

Ernest testified that he and his brother had walked up the Hartford Road because they heard a bulldozer on J. C. Nichols's place and that when they came to the lane leading to defendant's farm, they decided to see what was down there. They did not know that defendant had any fish ponds and they could not see the ponds until they went almost .4 mile from the Hartford Road. Ernest testified that the boat was in the water of the lower pond; that he and his brothers waded in the upper pond and then started playing in the lower pond.

Defendant had a small boat on his premises. He testified that he obtained the boat for use in repairing his drain pipe in the pond, had used it once for that purpose and then had left it stored in an old school bus some distance from

the larger pond and that on his last visit to the premises the boat was in this bus. No one in the neighborhood used the ponds at any time. Defendant visited his ponds about once a month.

During arguments on this motion for hearing, counsel for plaintiff announced he was not pressing liability on the theory of attractive nuisance, instead was pursuing under the corollary of dangerous instrumentality. The court examines, however, to determine whether an issue of fact exists under either theory.

South Carolina has not propounded that the attractive nuisance doctrine generally is not applicable to bodies of water, artificial as well as natural, in absence of some unusual condition or artificial feature other than the mere water and its location. North Carolina has so ruled. Matheny v. Stonecutter Mills Corp., 249 N.C. 575, (1959), 107 S.E.2d 143 [1]. South Carolina has upheld liability in those cases where the alleged attraction is exposed or the settlement is thick. Franks v. Southern Cotton Oil Co., 78 S.C. 10, 58 S.E. 960, 12 L.R.A.,N.S., 468 (1907); McLendon v. Hampton Cotton Mills, 109 S.C. 238, 95 S.E. 781 (1917); Hayes v. Southern Power Co., 95 S.C. 230, 78 S.E. 956 (1913); Sexton v. Noll Construction Co., 108 S.C. 516, 95 S.E. 129 (1918); Renno v. Seaboard Air Line Ry., 120 S. C. 7, 112 S.E. 439 (1922); and Pigford v. Cherokee Falls Mfg. Co., 124 S.C. 389, 117 S.E. 419 (1923). In Bannister v. F. W. Poe Mfg. Co., 162 S.C. 1, 160 S.E. 138 (1931), South Carolina, a case in which the facts bear a marked similarity to the facts here, defendant was held blameless for maintaining a small pond in a cow pasture where a child was drowned 600 feet away from the playground he left without authority. The deciding court there made a decision on the facts, pointing out that the pond could not be seen from the playground, that the pond had existed for some time, the boys

"slipped away" to go to the pond, and the maintenance of a fence was no guarantee against the ambition of a boy to go to the pond. Thus it seems that the South Carolina court has said, in essence, what the North Carolina court has said explicitly.

Later, in Hancock v. Aiken Mills (1936), 180 S.C. 93, 185 S.E. 188, South Carolina reviewed its previous holdings, and held that the application of the doctrine of attractive nuisance is limited to those cases in which the child was injured or killed, "was attracted to play with or play in, or swim in or wade in, the instrumentality that brought about its injury or death."

Applying the South Carolina cases to the facts before this court, it is clear that defendant is not liable and the evidence would not project recovery by plaintiff under the attractive nuisance doctrine. Initially, the children were attracted to the pond site by a bulldozer, the noise from which aroused their curiosity, and commanded the direction of their inquiry. Other facts reveal that the ponds were not exposed, on the contrary were hidden from the highway and from the normal play area of the children. There is no evidence they knew of the ponds, or that they, or any other children had previously been attracted by the water, or by the boat. The facts negate the conclusion that any children had at any time previously been to the pond sites. Uncontradicted testimony revealed the property was enclosed by a fence and a chain was used to block the entrance. Whether there were "no trespassing" signs is immaterial. Whether the court considers the boat, or the ponds, or both, as the instrumentality that led to the fatal drowning, the deceased did not go on the property by reason of the temptation of that instrumentality.

Having determined that the facts negate any liability to defendant for maintaining an attractive nuisance, the court

---

1. "It is, therefore, not negligence *per se* to maintain (even) an unenclosed pond, pool, lake, or reservoir on one's premises." [107 S.E.2d at p. 146].

examines plaintiff's claim for relief under the corollary, the "dangerous instrumentality" theory. This may also be called the alternate doctrine to attractive nuisance. South Carolina has not catalogued the recovery theory explicitly as the "dangerous instrumentality" theory but it has adopted it. This court finds that West Virginia,[2] which does not recognize the "attractive nuisance" doctrine, defines the "dangerous instrumentality" doctrine:

> An owner or proprietor of a dangerous instrumentality must exercise reasonable care to avoid injury to a trespassing child, whose presence at the time and place of danger was either known to the proprietor or might reasonably have been anticipated.

In Everett v. White, 245 S.C. 331, 140 S.E.2d 582 (1965) recovery was sought for alleged personal injuries sustained by a five-year old boy who fell into a hole excavated by the defendant in the course of constructing a house. The complaint alleged that children from the neighborhood, including plaintiff, were accustomed to play on the work site with the knowledge and consent of the defendant. South Carolina held that the complaint stated a cause of action independently of that of attractive nuisance. In doing so the court pointed out that where the owner leaves an exposed dangerous instrumentality which may not be termed an "attractive nuisance" where children are likely to come in contact with it, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to occur by virtue of its being so exposed and is bound to take reasonable pains to guard it. This, of course, is a corollary ground of recovery to that of attractive nuisance where the owner artificially creates something which from its nature is especially attractive to children and dangerous to them and where he is bound to take reasonable pains to see that children will not be injured by coming in contact with the attractive nuisance.

The appellate court affirmed a lower court ruling overruling a demurrer, and set forth the "dangerous instrumentality" doctrine.

In Lynch v. Motel Enterprises, Inc., 248 S.C. 490, 151 S.E.2d 435, the issue is presented where a mentally defective seven-year old child was drowned in defendant's pool. The pool was clearly visible from the public sidewalk, eighty feet from which it was separated only by a parking lot. A church, school and playground were located nearby. The pool was open on the side next to the street and the defendant's employees knew that plaintiff's intestate had been around the pool on several occasions prior to being drowned. The court held that while the evidence was sufficient to have warranted an inference that Jimmy was attracted by the pool, this was not a prerequisite for recovery since the rule laid down in *Everett* required the defendant, having left a dangerous instrumentality exposed where children could see it and were likely to come in contact with it, should reasonably have anticipated the injury and was bound to take reasonable precautions to guard it.

In the latest case considered by the South Carolina Supreme Court, that of Kirven v. Askins, et al., S.C., 169 S.E.2d 139, the court reiterated the rule laid down in Hancock v. Aiken Mills, Inc., supra, that unless the child goes on the property by reason of the temptation of the very instrumentality, which is held to be the attractive nuisance, he cannot recover. In *Kirven*, the child was not attracted to the premises by reason of the presence thereon of the pile of dirt or clods of clay. Implicit in this decision is that there was no evidence that the boys involved were attracted to the construction site by the desire to throw clods. It also appears that, although the premises were not barricaded or fenced, and although the defendant knew that children played on the construction site, the fact that the children were not at-

---

2. Hatten v. Mason Realty Co., 148 W.Va. 380, 135 S.E.2d 236, 237, 241 (1964).

tracted to the construction site by the instrumentality which injured the plaintiff, compelled the court to affirm the judgment for the defendant.

From the American Law Institute Restatement of the Law of Torts (Second Edition, 1965) Volume 2, page 197, Section 339) this court lifts:

Artificial Conditions Highly Dangerous to Trepassing Children.

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Examining the facts here in the spotlight of condition (a) and (b) of the Restatement's rule the court finds that there is no evidence that the children were likely to trespass on that part of the land where the ponds, if ponds as such are to be considered dangerous which this court does not hold, were located. There is no necessity under this section that the children's presence be caused by the alleged dangerous instrumentality. There is no evidence the defendant *had reason to know* that the

children were likely to trespass. The experience of defendant as a landowner was all to the contrary. The home discipline of the children, their past conduct, the fact that the parents did not know of the ponds all point to his innocence to any danger. Had he inquired as to children trespassing, he would have received no information to put him in knowledge. There is no evidence *any child* had previously visited the ponds.

Additionally, there is no evidence to bring this case under condition (c), (d), and (e) of the section. This court must take into consideration the physical facts, the lack of exposure of the ponds, the fence, the distance involved. In all these facets of evidence before the court there is nowhere a sufficiency to effect recovery under the corollary of "dangerous instrumentality".

Defendant is entitled to summary judgment. As Judge Russell so aptly stated in granting such relief in Horne v. Seaboard Coast Line Railroad Company, 301 F.Supp. 561 (D.C.S.C.1969):

It has often been stated that summary judgments are not favored in negligence cases. However, our Court has indicated that such remedy is appropriate where under 'the material facts of the case', it is indisputably clear that plaintiff cannot, as a matter of law, recover. Thus, in the recent case of Bland v. Norfolk and Southern Railroad Company, Inc. (CCA N.C. 1969) 406 F.2d 863, the Court said: 'It is true that because of the peculiarly elusive nature of the concept of negligence, it is the rare personal injury case which may be properly disposed of by summary judgment. Citing cases.) But this is not to say that where, as here, that unusual case is encountered, a plaintiff must have his day in court even though there is nothing to be tried.' See, also, Berry v. Atlantic Coast Line Railroad Company (CCA S.C.1960) 273 F.2d 572, 581–583, cert. den. 362 U.S. 976, 80 S. Ct. 1060, 4 L.Ed.2d 1011. This is such a case.

There is no dispute concerning the material facts nor concerning the inferences which may properly be drawn from them. It is crystal clear that, under the facts viewed in the most favorable light to the plaintiff, this defendant is entitled as a matter of law to a judgment as the facts reveal no actionable negligence. Plaintiff has listed all persons known to have any knowledge of the facts. Those who would give statements to counsel for the defendant have furnished affidavits filed with the court. Plaintiff has not deposed any of the others nor has he filed the affidavits of any person listed by him as a witness. No inference can be drawn from the admitted facts which would indicate any actionable negligence on the part of defendant.

The Clerk will enter judgment for defendant.

And it is so ordered.

