6630

## FRANKS v. SOUTHERN COTTON OIL CO.

NUISANCE—CHILDREN—DAMAGES.—The parents of an infant may recover for his death caused by drowning in a reservoir maintained by a corporation unguarded, for use in its business, in open field near the public highways, streets and many residences of a city, where children of tender years, with knowledge of the corporation, were accustomed to resort for play.

Before PURDY, J., Laurens, April, 1907.    Affirmed.

Action by R. J. Franks, administrator of Luther Franks, against Southern Cotton Oil Co. and R. H. Hudgens. From order overruling demurrers, defendants appeal.

*Messrs. Mitchell & Smith, Sheppards, Grier* and *Park,* and *Dial* and *Todd,* for appellant.

*Messrs. Grier* and *Park* cite: *Intestate was a trespasser:* 58 S. C., 80; 63 S. C., 46; 64 S. C., 554. *What duty did defendant owe intestate?* 57 S. C., 553; 61 S. C., 556; 63 S. C., 53; 64 S. C., 559; 58 S. C., 364; 5 S. E., 371; 38 L. R. A., 573; 40 L. R. A., 533; 42 L. R. A., 288; 43 L. R. A., 148; 60 Am. R., 854; 45 Am. R., 365; 55 L. R. A., 310. *The duty due above licensee:* 87 Am. Dec., 644; 50 Am. R., 783; 1 Thomp. on Neg., sec. 945; 67 S. C., 499; 29 L. Ev. (U. S.), 235; 54 L. R. A., 214; 57 S. C., 337; 1 Am. & Eng. Ann. Cas., 207, 208; 33 L. R. A., 755; 6 Am. Neg. R., 73; 72 N. Y., 1006; 14 L. R. A., 276; Bish. non-Con. Law, 854; 45 Neb., 467; 70 L. R. A., 508; 52 L. R. A., 920.

*Messrs. Simpson, Cooper* and *Rabb,* contra, cite: *Defendants are liable under doctrine of turntable cases:* 25 S. C., 28; 66 S. C., 47; 84 U. S., 745; 27 L. R. A., 206; 152 U. S., 434; 1 Q. B., 29; 39 L. R. A., 112.

## STATEMENT OF FACTS.

This is an appeal from an order overruling a demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action.

The first paragraph of the complaint alleges the corporate existence of the defendant; and the other paragraphs are as follows:

"That the defendant, R. H. Hudgens, is now, and at the times hereinafter stated was, the manager of the cotton seed oil mill located at Laurens, South Carolina, and owned and

operated by the defendant, the Southern Cotton Oil Company.

"That the plaintiff is the qualified administrator of the estate of Luther Franks, deceased, who departed this life intestate on the 20th of April, 1906.

"That on the 20th day of April, 1906, and prior thereto, the defendant, the Southern Cotton Oil Company, owned, and jointly with its manager, R. H. Hudgens, maintained and used in connection with its oil mill at Laurens, South Carolina, a large and deep reservoir, which it kept filled with water, to be used in connection with the said oil mill, said reservoir being located in an open field, near the public highways, streets, and many of the residences of the city of Laurens, where children of tender years were accustomed to resort for play, the said reservoir being not protected by a fence, guard or otherwise, but was exposed and easily accessible to children, who not knowing of the danger made use of it as a place of amusement.

"That it was the duty of the defendant, the Southern Cotton Oil Company, and also the defendant, R. H. Hudgens, as manager of the said oil mill, to have securely protected the said reservoir, so that children resorting to it as a place of amusement would not be injured, but the said defendants, not regarding their duty in that behalf, carelessly, negligently, wilfully and wantonly permitted the said reservoir to remain uninclosed and unprotected in any way.

"That the defendant, the Southern Cotton Oil Company, as well as the defendant, R. H. Hudgens, knew of the unprotected condition of the said reservoir, and that children resorted there as a place of amusement, which facts this plaintiff is informed and believes, and so alleges, had been more than once called to the attention of the defendants, with the request that said reservoir be properly protected.

"That the plaintiff's intestate, Luther Franks, a small boy of tender years, being less than ten years of age, while playing around the said reservoir, which was filled with water, was drowned; that the plaintiff is the father of the said

Luther Franks, deceased, and Mrs. Nannie Franks is his mother, for whose benefit this action is brought." * * *

The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, in that it does not show that the injuries of the deceased were the result of a failure on the part of the defendant to perform any duty it owed to the deceased.

Under the authority of *Bridger* v. *R. R.*, 25 S. C., 24, and *Pekin* v. *McMahon*, 27 L. R. A. (Ill.), 206, his Honor, the presiding Judge, overruled the demurrer, and the defendant appealed.

### OPINION.

August 20, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY (after stating the facts).

The appeal raises the single question, whether the defendants owed a duty to the deceased, in regard to the reservoir.

In the case of *Bridger* v. *R. R.,* 25 S. C., 24, this Court followed the doctrine announced in *Sioux City &c.* v. *Stout,* 17 Wallace, 657—the first of what are known as the turntable cases—in which it was held, that an infant could recover for an injury causing him damages, as the result of a failure on the part of the railroad company to keep its turntable locked or properly guarded.

If that principle is applicable to this case, it is conclusive of the question under consideration.

The United States Supreme Court has not confined the doctrine to turntable cases, but has applied it in other cases, notably in *Union &c. R. R.* v. *McDonald,* 152 U. S., 262, 279, where it was held that the railroad company was guilty of negligence in leaving unguarded the slack pile, made by it, in the vicinity of its depot building. The Court in that case uses this language:

"In *Townsend* v. *Wathen,* 9 East, 277, 281, it was held that if a man place dangerous traps, baited with flesh, in his own ground, so near to a highway, or to the premises of

another, that dogs passing along the highway, or kept in his neighbor's premises, would probably be attracted by their instinct into the traps, and in consequence of such act his neighbor's dogs be so attracted and thereby injured, an action on the case would lie. 'What difference,' said Lord Ellenborough, C. J., 'is there in reason between drawing the animal into the trap by means of his instinct, which he cannot resist, and putting him there by manual force?' What difference, in reason, we may observe in this case, is there between an express license to the children of the village to visit the defendant's coal mine, in the vicinity of its slack pile, and an implied license, resulting from the habit of the defendant to permit them, without objection or warning, to do so at will, for purposes of curiosity or pleasure. Referring to the case of *Townsend* v. *Wathen,* Judge Thompson, in his work on the Law of Negligence, well says: 'It would be a barbarous rule of law, that would make the owner of land liable for setting a trap thereon baited with stinking meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed, and which would exempt him from liability for the consequence of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it, and tempted to intermeddle with it, by instincts equally strong, might thereby be killed or maimed for life.' Vol. I, pp. 304, 305."

The principle is thus stated in Thompson on Neg., section 1024: "The owners and occupiers of real property are held by the law in some respects to a different standard of liability, in case of injuries to children, coming upon their premises, from that under which they stand with respect to adult persons. It is believed that the following propositions may safely be stated to be the law: 1. The owner or occupier of real property stands under the same duty to children, who are expressly or impliedly *invited* to come upon his premises, in respect of keeping such premises safe, to the end that they will not be injured in so coming, under which he stands to adult persons. 2. As a general rule, he is not

bound to keep his premises safe, or in any particular condition, for the benefit of the *trespassing children* of his neighbors, or for the benefit of children who occupy no more favorable position than that of *bare licensees.* 3. A well grounded *exception* to the foregoing principles, is that one who artificially brings or creates upon his own premises, any dangerous thing which from its nature has a tendency *to attract the childish instincts of children* to play with it, is bound, as a mere matter of social duty, to take such reasonable precautions as the circumstances admit of, to the end that they may be protected from injury while so playing with it, or coming in its vicinity."

The same author uses this language in section 1030 : "We now come to a class of decisions, which hold the landowner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises, where they are accustomed to come with or without license. These decisions proceed on one or the other of two grounds : 1. That where the owner or occupier of grounds *brings* or *artificially creates* something thereon which from its nature is especially *attractive to children,* and which at the same time is dangerous to them, he is bound, in the exercise of social duty, and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. 2. That although the dangerous thing may not be what is termed an *attractive nuisance*—that is to say, may not have especial attraction for children by reason of their childish instincts—yet where it is so *left exposed* that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them, from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them."

In 1 Street's Foundations of Legal Liability, 160-161, the reason for the liability in the turntable cases is thus stated :

"Liability in the turntable cases is strictly put upon the ground, of implied invitation to children, to come upon the premises in order to play there, the invitation being supposed to arise from the attractive nature of these dangerous engines. This hypothesis is hatched up, to evade the obstacle which arises from the fact, that the plaintiff is a trespasser. But it is unnecessary, as it is inadequate and artificial. Liability is to be ascribed to the simple fact, that the defendant, in maintaining a dangerous agent from which harm may, under peculiar conditions, be expected to come, has the primary risk, and must answer in damages, unless a counter-assumption of risk can be imposed on those who go there to play." See, also, 2 Woods Railway Law, section 321, *et seq.*

In Cooley on Torts, p. 624, the author says: "In the case of young children, and other persons not *sui juris,* an implied license might sometimes arise, when it would not in behalf of others. Thus, leaving a tempting thing to play with, exposed where they would be likely to gather for that purpose, may be equivalent to an invitation to them to make use of it."

In Bishop Non-Cont. Law, 854, it is stated: "A child too young to be controlled by reason, therefore, not improperly led by its instincts, receives from the law the protection which its special nature requires. For example, a man who leaves on his own ground, open to the highway or upon or beside any public place, a dangerous machine, likely to attract children, will be liable to one injured by playing with it, if he neglected precautions against such an accident."

In 7 Enc. of Law, 403-4, it is said: "A child injured while trespassing has no right of action, unless injured by the negligence of the defendant, when the injury might have been avoided by ordinary care on the defendant's part. But when a child of tender years commits a mere technical trespass, and is injured by agencies that, to an adult, would be open and obvious warnings of danger, but not so to a child, he is not debarred from recovering, if the things instru-

mental in his injury were left exposed and unguarded, and were of such a character as to be likely to attract children, excite their curiosity, and lead to their injury while they were pursuing their childish instincts. Such dangerous and attractive instrumentalities become an invitation by implication."

In *Pekin* v. *McMahon*, 27 L. R. A. (Ill.), 206, the Court held that a pond or pit in a populous city, in which the water is from five to fourteen feet deep, with logs and timber floating therein, on which children are in the habit of playing, near a driveway across vacant lots, but partially inclosed from the streets on the sides thereof, renders the city which owns them liable for the drowning of a child playing there, if the premises are found by the jury sufficiently attractive to entice children into danger and to suggest the probability of such an accident.

In this case are cited numerous others in which the doctrine of the turntable cases is sustained, where the injuries were caused by the agencies of a different character.

To the same effect is the case of *Biggs* v. *Conn. Barb Wire Co.*, 44 L. R. A. (Kan.), 655, 658, which held that the maintenance of dangerous machinery on private grounds, unprotected from the visits of trespassing children, renders the owner thereof, who has knowledge that children are accustomed to frequent said grounds, and climb upon the structures supporting dangerous appliances, liable in damages to the next of kin of a boy fourteen years of age who was caught in the exposed machinery and killed. The Court quotes with approval the following language from the case of *Price* v. *Atchinson Water Co.*, 58 Kan., 551: "It is, however, contended by the defendant in error that, inasmuch as the deceased was a trespasser upon its grounds, it owed to him no duty to guard against the accident which occurred. Without doubt, the common law exempts the owner of private grounds from obligation to keep them in a safe condition for the benefit of trespassers, idlers, bare licensees, or others who go upon them, not by invitation express or

2—78

implied, but for pleasure or through curiosity. Cooley on Torts, 2d ed., 718; 1 Thomp. Neg., 303; *Dobbins* v. *Missouri, K. & T. R. Co.,* 91 Tex., 60, 38 L. R. A., 573. The common law, however, does not permit the owner of private grounds to keep thereon allurements to the natural instincts of human or animal kind, without taking reasonable precautions to insure the safety of such as may be thereby attracted to his premises. To maintain upon one's property enticements to the ignorant or unwary is tantamount to an invitation to visit and to inspect and enjoy; and in such cases the obligation to endeavor to protect from the dangers of the seductive instrument or place follows as justly as though the invitation had been express."

The same principle was announced in *Kopplekom* v. *Colo. Cem. Pipe Co.,* 54 L. R. A. (Colo.), 284, 285, where the Court held that the owner of an uninclosed lot adjacent to a highway, in a thickly populated part of the city, who leaves unguarded thereon a heavy section of cement pipe of unstable equilibrium, which because of its large diameter is an attractive plaything for children to roll about, and who knows that they resort there for that purpose, is liable to a child who, not having arrived at years of discretion, is injured by the pipe toppling over on him while he is playing with it. The Court used this language: "If it be said that the complaint itself shows that the piping was upon private premises, that the children were trespassers, and that they were not upon the land by invitation or consent of defendant, it may be answered, as it was by Chief Justice Cooley in *Powers* v. *Harlow,* 53 Mich., 507, 51 Am. Rep., 154, 19 N. W., 257, and approved by all of the authorities that we have cited: 'Children, wherever they go, must be expected to act upon childish instincts and impulses; and others, who are chargeable with a duty of care and caution towards them, must calculate upon this and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they, in their immature judgment, might naturally suppose they were

at liberty to handle or play with, they should expect that liberty to be taken.' Or, as was tersely and pithily expressed in the Minnesota case (*Keffe* v. *Milwaukee & St. P. R. Co.,* 21 Minn., 207, 18 Am. R., 393) : 'What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years.' \* \* \* If an owner sees fit to keep on his premises something that is an attraction and allurement to the natural instincts of childhood, the law, it is well settled, imposes upon him the corresponding duty to take reasonable precautions to prevent the intrusion of children, or to protect from personal injury such as may be attracted thereby."

Under the caption of "Liability for injuries to children," the author, in 1 Thompson on Neg., section 1026, thus speaks in strenuous language of the doctrine, that liability extends only to *wanton* injuries: "One doctrine under this head is, that if a child trespass upon the premises of the defendant, and is injured in consequence of something that befalls him while so trespassing, he cannot recover damages unless the injury was *wantonly inflicted,* or was due to the recklessly careless conduct of the defendant. This cruel and wicked doctrine, unworthy of a civilized jurisprudence, puts *property* above *humanity,* leaves entirely out of view the tender years and infirmity of understanding of the child, indeed his inability to be a trespasser, in sound legal theory, and visits upon him the consequences of his trespass, just as though he were an adult, and exonerates the person or corporation upon whose property he is a trespasser from any duty towards him which they would not owe under the same circumstances towards an adult."

We recognize the fact, that there are numerous decisions announcing a rule contrary to that hereinbefore stated, but we prefer to follow the doctrine based upon humanity and the wholesome maxim, *"Sic utere tuo ut non alienun laedas."*

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.