16346

DANIELS v. TIMMONS
(59 S. E. (2d) 149)

540

Messrs. *Harold C. Seigler* and *F. Ehrlich Thomson,* of Columbia, *for Appellant,*

Mr. *John Gregg McMaster,* of Columbia, *for Respondent,*

April 21, 1950.

A. L. GASTON, Acting Associate Justice.

This suit is in behalf of James Carroll Daniels who was a minor fifteen months of age at the time of his injury. The complaint alleges that the child and his parents were tenants of the defendant, and occupied an apartment on the second floor of the apartment house owned and leased by the defendant. In said building, there are twenty-five or more apartments, twelve of which are on the second floor and four on the third floor. There was a second floor porch at the end of the hall on the front of the building, which was under the control and possession of the defendant, and this porch was for the common use of several tenants. This porch had a banister railing around it and several wickets or uprights were missing on the front part, so that there was an opening which was left unguarded and dangerous.

The complaint alleges that on 30th October, 1948, at about 4:00 P. M., this child proceeded from his parents' rooms, along the hall and walked or ran onto this porch and fell through the opening of the banister wickets to the cement walk below, thereby sustaining injuries to his person for which actual and punitive damages were sought.

The gravamen of the complaint is the alleged negligence and willfulness of the defendant in the following particulars, to-wit: (1) "in maintaining and allowing to exist the porch in such a dangerous condition as to be a nuisance;" (2) "in maintaining a nuisance, a dangerous porch on the premises, a part of which was leased to the plaintiff's parents;" and (3) "in failing to inspect the porch and notify all users of its dangerous condition;" (4) "in failing to maintain the porch in a safe and usable condition after being requested to do so and after receiving notice of its dangerous condition;" (5) "and in failing to repair the same which was for the

common use of several tenants;" (6) "and that the defendant knew or should have known of this dangerous condition."

The answer of the defendant admits that she is engaged in the business of renting apartments in the City of Columbia, and that she rented a certain apartment located in the city at 2920 Divine Street to Robert L. Daniels and his wife. The answer denies that an accident actually took place as alleged and that if it did occur that the defendant was in no-wise responsible for the same.

For a second defense the answer alleges that if the plaintiff was injured as the result of any accident as alleged in the complaint, such injury and damage, if any, were caused directly and proximately by the sole negligence and willfulness of the plaintiff's mother and father, and/or whomsoever his mother and father placed him in charge of, in the following particulars, to wit: (1) "in failing to properly look after and attend this child who was then a fifteen months old baby;" (2) "in allowing the baby to be placed on the floor so that he could crawl or toddle out to a place where he could injure himself;" (3) "and failing to exercise such attention and care as a person of ordinary care and prudence would do under the circumstances;" and (4) "in allowing the baby to crawl or wander away from the supervision of the person in charge of the child in uttter disregard of any consideration for the child's own safety and welfare."

The third defense of the answer alleges the contributory negligence and willfulness of the parents of the child and/or of the person in charge of the child in the particulars set forth in the second defense, which are unnecessary to repeat now. During the progress of the trial, the defense of contributory negligence was struck out by the Court. It is admitted by counsel that this was properly done. No issue is now before this Court as to contributory negligence of the parents or of the custodian of the child. In passing we wish to remark that this defense was most correctly struck out or abandoned. In a very recent interesting case

in an opinion by Mr. Justice Oxner this Court had occasion to reiterate the law in regard to this supposed defense. Quoting from the cases of *Frank F. Limehouse v. Southern Railway Co. et al.* and *Maybry Limehouse v. Southern Railway Co.*, S. C., 58 S. E. (2d) 685, 687, which were tried together and opinions filed March 14th, 1950, reported in Westbrook as of 18th March, 1950, we said: "As to the cause of action at common law, the contributory negligence or gross negligence of the mother would be no defense. Of course, the children, both of whom were under seven years of age, were incapable of personal negligence. It is well settled that in an action by a child for personal injuries, the contributory negligence of a parent or custodian is no defense. In discussing the question in *Watson, Administrator, v. Southern Railway*, 66 S. C. 47, 44 S. E. 375, 376, the Court said: 'To impute contributory negligence to such a child would be to make him a tort feasor by imputation, when he could not be such in fact. It would be visiting the innocent with the faults of the guilty. It would permit the child's protector to be authorized to destroy it. It would place the personal rights of the child at the mercy of any one by whose fault it is injured, provided the guilty one happens to have the co-operation of the child's custodian in the work of injury. Such a doctrine is an anomaly in the law.' "

At the close of plaintiff's testimony, the trial Judge expressed his doubt as to anything in the evidence to establish willfulness and at the close of all of the testimony ruled out all elements of punitive damages. At appropriate times, the defendant moved for a nonsuit and for a directed verdict, as to the claim for actual damages. These motions were overruled. The Jury rendered a verdict in a very moderate amount for the plaintiff, who by the evidence providentially was only slightly injured, and miraculously escaped any broken bones or permanent damage. The defendant thereupon moved for a judgment *non obstante veredicto* and failing in that, for a new trial. These motions were overruled.

In due time the defendant served notice of intention to appeal from the judgment below and the case now comes before the Court upon exceptions. The appeal was ably argued by counsel for both parties and appellant's counsel vigorously contend that the trial Judge should have granted a nonsuit or ordered a directed verdict in favor of the defendant. This contention arises under the exceptions which are presented as questions one and two in the printed brief of appellant, and will be so considered without repeating *seriatim* those exceptions which relate to such questions. The Court is thus called upon to consider the facts in the case under the testimony and it is necessary to review the evidence. Ordinarily the facts are for the jury to decide and an argument on the facts is more appropriately left to the wise decision of that tribunal under the Constitution which does not permit the trial Court to discuss the testimony in the charge to the jury. Errors of law are to be corrected on appeal. Issues of fact are to be settled by the jury. If an argument on the facts fails to convince a jury, there is small chance of a reversal on appeal, except in a case where there is absolutely no competent evidence to be submitted to the jury on a particular issue of fact. A party litigant should be satisfied with the finding of a jury in a fair trial in a meritorious case, as far as the disputed facts are involved. We have no better or higher method under the law to settle controversies between litigants arising out of disputes in regard to business matters, and the rights and remedies of the parties, on the law side of the Court. A fair trial before an impartial jury is the acme of a case.

The issue first argued is that there was no competent relative testimony to show that the injury sustained by the plaintiff was proximately caused by the negligence of the defendant. Appellant's counsel recognize that the rule of *res ipsa loquitur* does not obtain in this State; also it is contended by appellant that the plaintiff relies entirely on circumstantial evidence to establish the fact that the child actually suffered a fall from an alleged second floor porch.

We deem it therefore unnecessary to discuss the legal distinction between this case and any other case where the facts are not similar. The most recent philosophic discussion of the evidentiary force and effect of the circumstances relied upon as contradistinguished from mere *res ipsa loquitur* is announced in the case of *Eickhoff v. Beard-Laney, Inc., et al.,* 199 S. C. 500, 20 S. E. (2d) 153, 141 A. L. R. 1010. As is said in that case, in civil actions every other reasonable conclusion (as required in criminal cases) need not be excluded; proof of circumstances warranting a given inference is sufficient in such cases. The facts and circumstances shown should be reckoned with in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates. For another interesting case where may be found an analytical array of circumstances relied upon see that of *Owens v. Ocean Forest etc.,* 196 S. C. 97, 12 S. E. (2d) 839. A brief résumé of the facts relied upon and established by the evidence is necessary; and the evidence must be considered in the view most favorable to the plaintiff in considering the motion for a nonsuit; also all of the evidence on both sides is now before the Court and must be reckoned with to ascertain if the refusal to direct a verdict or grant a nonsuit should be upheld. In fact the witnesses for the defense did not differ materially from those for the plaintiff. Shortly before the time of the injury the little fifteen months old child of Sgt. Daniels and wife was running out in the hall on the second floor and the little Metz fellow was playing with him. The Daniels boy was playful and rather small. The Metz boy was a little larger and some few months older. Mrs. Daniels' little boy came by the apartment of Miss Ruth Shull and pushed on her door. She opened the door and asked him in. He was rather bashful and backed away. Miss Shull closed her door and later on she heard the two boys run out on the porch. She testified, "later on I heard screaming and looked out and ran down the stairs, and someone said Jimmy had fallen off the porch upstairs. I saw him as the lady was bringing him up

the stairs." "The little boy's eyes were closed, he had a knot on his head; his mouth was bleeding," other witnesses said.

Miss Shull testified that she had no doubt about Jimmy falling off the upstairs porch. She was a witness for the defense and testified as above stated. The witnesses for the plaintiff established the surrounding circumstances. Mrs. Daniels with her husband and baby rented and occupied a one-room apartment with an adjacent small bath on the second floor, there being twelve apartments on that floor. They formerly had an aparment on the first floor but moved to the second floor before the date of the injury which occurred on a Saturday afternoon October 30th, 1948, at about 4:45 o'clock. There were twelve apartments on the first floor, and six on the third, making thirty in all.

The defense denied that there was a second floor porch but that this was only the top of the roof of the down stairs porch with ornamental banisters around the top roof. But in their argument for appellant counsel say that since the plaintiff's witnesses refer to this part of the building as a second floor porch, they will do so without conceding that it was intended to be used as such. Suffice it to say now that the defendant's witness, Mrs. Alta Belle Forester, explained it thus, in answer to the question asked by the defendant's attorney to tell about that upstairs porch. "Is that the roof of the porch downstairs?" "It is supposed to be the roof, because Miss Timmons—because me and my husband, and Mrs. Sword and her boy friend put the chairs up there." "The way these front rails got knocked out, the people in 21 one night we were on the porch drinking beer and he got mad and kicked the rails out." "He was a Sergeant out at the Fort. I can't think of his name. At the time Miss Timmons found out we had the rucus up there, she was going to make all of us move, but finally let us stay. Because of having that party up there and kicking the railing out."

Several other witnesses who had their apartments on the second floor said the second floor porch was used by them.

One lady said she "made a practice of sitting on the porch watching for my husband to come home" from his duties at the Fort. It had just a plain floor.

The slats were still missing at the time of the accident. The Court has before it a photograph in the record which was taken only a few days before the accident by another tenant, and which clearly displays the openings caused by and due to the slats being out. A child could not climb over or under or through the banisters at any other point except where the holes were made by the absence of the slats. All of these facts were amply detailed in the testimony.

Plaintiff's evidence further establishes the facts which show that the mother of Jimmy and her friend, Mrs. Metz, who also occupied one of the apartments were together in the room of Mrs. Daniels, together with their little sons. Mrs. Metz was a friend and next door neighbor on the same floor. She was to have dinner with Mrs. Daniels and went into her room to see the correct time by her clock. Jimmy and the Metz child both went with Mrs. Metz into the hall. In a very short time Mrs. Daniels heard Mrs. Metz scream and saw her in the hall, headed downstairs, exclaiming that Jimmy had fallen off the porch. Immediately afterwards, Mrs. Daniels saw Mrs. Metz coming into the front of the building on the first floor with Jimmy in her arms. Mrs. Daniels was then coming down to the second floor stairway. Lt. A. F. Warnecke and his wife, Mrs. Cecelia Warnecke, were in their apartment on the second floor and upon being startled by the screaming, went into the hall as Mrs. Metz was bringing the baby up the stairway. The baby was taken in his arms by the Lt., who testified most fully that the baby was breathless, speechless, bleeding at the mouth, and bruised..

The foregoing résumé of the pertinent testimony warrants the submission by the trial Court of the case to the jury, and it would have been astounding for the jury to render a verdict against the weight of the evidence.

The defense sedulously prodded the parents of Jimmy because of the absence of Mrs. Metz as a witness, by reason of her departure a few days before Court convened for some place in Charleston. Appellant, it appears by this line of cross examination, had been "out there" to talk with this lady and had procured a statement from her, which was not submitted to plaintiff's counsel, who asked in open Court to be allowed to look at it, and introduce it in evidence. It was appellant's contention that Mrs. Metz alone knew how the accident occurred and that Jimmy's mother blamed her for it. The child's father under cross examination was asked, (Q.) "If anybody saw the baby get hurt it had to be Mrs. Metz?" (A.) "No, it didn't. Nobody saw the baby fall except one man passing by in a car. I have been unable to find him or where he lives."

Although appellant had a statement from Mrs. Metz, the statement was not proffered in evidence and the defendant herself refrained from taking the witness stand to explain what she knew about her own business in reference to the absent rails or slats to the banisters. These were matters for comment to the Jury.

The failure of either party to produce the testimony of an available witness, and no explanation is made, may strengthen the factual showing relied on. *Padgett, Adm'x. v. Southern Ry. Co.*, S. C. 1950, 58 S. E. (2d) 895; *Mickle v. Dixie etc. Ins. Co.*, S. C., 57 S. E. (2d) 73, 75.

It is further urged by these exceptions that the only reasonable inference to be drawn from the testimony is that the plaintiff's injuries were caused by the negligence of the child's mother or custodian. There was testimony to the effect that a screen door at the end of the hall had the usual type of lock with catch and knob. The defendant who owned and leased these apartments to numerous tenants and their small children was well aware of the use in common of the hall and porch, yet she did not keep porch in a safe condition nor repair the defective railings, which were under her con-

trol. The law implies an obligation creates a legal duty to keep the same in repair and to operate properly such parts of the premises which the lessor reserves possession and control of for the common use of several tenants and this is peculiarly applicable to halls, entrances, porches or stairways of which no particular tenant has exclusive possession or control. *Timmons v. Williams Wood Product Corp.,* 164 S. C. 361, 162 S. E. 329 and cases cited; *Binnicker v. Adden,* 204 S. C. 487, 30 S. E. (2d) 142.

There was no evidence to indicate that a third person left the screen door open while Mrs. Daniels said that the Metz child was large enough to do so. If a chain of circumstances put in motion resulted directly and proximately in the child's falling off the porch by reason of defendant's acts of negligence under all of the facts and circumstances, it does not relieve the defendant from liability by any theory that others were joint tort-feasors. The evidence failed to show that the sole cause of the injury was the negligence of any other person. The mother testified that the child was out of her sight and hearing for a very short while and her anguish when the piercing screams of Mrs. Metz gave the alarm may well have been taken by the jury to show her care and solicitude for her baby. Nor did the evidence show that Mrs. Metz was negligent. In the light of the *Limehouse case* above referred to, the personal rights of the innocent child are not to be defeated by the fault of a custodian if the defendant's negligence caused the injury.

The next point argued under the exceptions relates to certain requests by the defendant of propositions of law which the trial Judge held did not apply to the issues in the case, and refused to charge. The Judge did fully explain to the Jury in his general charge the law in reference to a landlord's duty; and that it was a question of fact for the Jury to decide as to who had control of the porch and the hallway; and that there is a different duty imposed by law upon a landlord where he rents and leases rooms, but retains cer-

tain portions of the premises in his possession for the use and benefit of other tenants in common, than there is upon a landlord who rents premises to a person *in toto* and altogether with no retention of any control.

Defendant's request to charge that the landlord is not liable for injuries caused by defects in the premises where the landlord has not made any warranty or contract as to the condition of the premises or as to the repair of defects was properly refused. This suit is for the negligent failure to perform a legal duty implied by law and is not upon a contract or warranty. The next exception is without merit. The Judge charged the Jury that if there was no contract to repair a house leased *in toto* then the tenant would have to take the house as he found it, and if the house is unsafe in ruins, he would have to move out. The requests which were refused sought to apply to the infant child of the parents the same proposition which did not apply to the case at all. No recovery was sought by the plaintiff for a breach of contract or warranty.

All of the exceptions relating to the refusal to charge all requests are carefully considered and overruled because not pertinent to any issue raised by the pleadings or by the testimony.

The last exception cannot be sustained. The ground stated in the exception is that it was error to charge the law of attractive nuisance which was irrelevant and in nowise material to the issues raised by the pleadings and proof in this case, and was confusing and prejudicial.

The plaintiff's cause of action is based primarily and fundamentally upon negligence. The specification in the complaint as to an alleged nuisance cannot be disassociated from the concept of negligence under the facts of the case. An infant incapable of negligence is injured by "wandering" into a place of danger under the control of the defendant. All of the socalled attractive nuisance cases spring from negligence of the defendant in regard to his or

her own property which is subject to being entered upon by a child who may be attracted onto the premises. So in the case at bar the alleged facts are sufficient to raise the issue of an attractive nuisance, and the use of the word nuisance by itself was sufficient in connection with the other facts set forth in the complaint to put the defendant on notice and to acquaint the defendant with the charge of attractive nuisance. There can be no magic in the use of the word attractive, but a statement of facts sufficient to show the likelihood of a child's entry into the place of danger on the premises owned and controlled by the defendant and leased to the parents of the child for use in common with other tenants of the premises and the allegation of facts to show the defendant's knowledge of the condition of her premises, and of the right of the child to be in the apartment, and its appurtenances such as the hallway and porch were amply sufficient to raise the issue as to the care required in respect to such child.

An early reported case on the defendant's negligence in leaving one of its turntables unprotected and unguarded where a child was injured and recovered damages is *Barrett v. Southern Pacific Co.*, 91 Cal. 296, 27 P. 666, also reported in 25 Am. St. Rep. 186.

We have a wealth of similar cases in this State, all of which are based upon negligence of the owner of the property or premises, *Perrin v. Rainwater,* 186 S. C. 181, 195 S. E. 283; *Frye v. Elroad,* 187 S. C. 233, 196 S. E. 884.

After consideration of the allegations of the complaint and of the answer as well as the testimony and the argument of counsel during the trial in respect to the plaintiff's request orally that the law of attractive nuisance be charged, we are satisfied that this issue was correctly submitted to the Jury.

Judgment affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., not participating.