650 S.E.2d 74

**The Late Terry HENSON, by Harriet HUNT, his Aunt and Appointed Guardian ad Litem and Personal Representative, Petitioner,**

**v.**

**INTERNATIONAL PAPER COMPANY, Georgetown Steel Corporation, The City of Georgetown, and Georgetown County, Defendants,**

**Of Whom International Paper Company is, Respondent.**

**No. 26374.**

Supreme Court of South Carolina.

Heard June 8, 2006.

Decided Aug. 27, 2007.

Rehearing Denied Sept. 19, 2007.

376

Gregg E. Meyers, of Charleston, for Petitioner.

Andrew K. Epting, Jr., and Amanda R. Maybank, both of Pratt–Thomas Epting & Walker PA, of Charleston, for Respondent.

Chief Justice TOAL:

In this civil action, the court of appeals held that a claim for attractive nuisance requires the injured child to be attracted

onto the defendant's property by the nuisance which causes him or her injury. Although we agree with the disposition reached by the court of appeals, we disagree with the rule found both in its opinion and in our precedent. Accordingly, we affirm the court of appeals' decision, but modify it as outlined below.

## FACTUAL/PROCEDURAL BACKGROUND

International Paper Company (IPC) owns and operates a canal that runs twenty-seven miles through Georgetown County. The canal diverts water from the Pee Dee River through a system of pump stations, pipes, and trenches, and ultimately delivers the water to IPC's plant in the city of Georgetown. The canal's depth is between twelve and twenty feet, and at points near the pump stations, the canal has a considerable current. Allegedly, the opaqueness of the diverted river water makes neither the canal's depth nor its current apparent from a visual inspection.

The tragic events underlying this legal action occurred in 1998. The record reveals that on the day in question, ten-year-old Terry Henson and his older brother went to the home of a friend where they agreed to accompany a companion to a go-cart "dirt jumping hill" near the city of Georgetown. Apparently, the boys ventured by the canal in their journey.

As the boys walked along the canal, they came upon what the parties refer to as a "pipe bridge." The record indicates that the "pipe bridge" is simply a large pipe spanning the canal for the purpose of allowing drainage to pass from the surrounding land on one side of the canal to the other. Metal bracing on part of the pipe gives the pipe the appearance of a bridge.

After the boys used the pipe to cross the canal, they discovered a discarded cast net lying on the ground. Though neither he nor his older brother could swim, Terry decided to enter the water. Terry held on to one end of the cast net while his friends held on to the other end, and after being in the water for a relatively short period of time, Terry attempted to grab the metal pipe supports and lift himself out of the water. In this process, Terry slipped and fell back into the

water. As Terry fell, his friends lost hold of their end of the cast net. Sadly, Terry drowned.

Petitioner instituted this wrongful death action alleging causes of action for negligence, attractive nuisance, and unguarded dangerous condition.[1] At the conclusion of Petitioner's case in chief, the trial court directed a verdict in favor of IPC on the cause of action for attractive nuisance. In support of this decision, the court stated "the case law indicates that the reason they needed to have gone [to the canal] was that they were attracted by [the canal] ... the evidence in this case is clear they went there for another purpose and then went to [the canal]."

At the trial's conclusion, a jury found both IPC and Terry negligent in causing Terry's death. Specifically, the jury attributed twenty-five percent of the fault to IPC, and seventy-five percent of the fault to Terry. The jury determined Petitioner's total damages were $400,000, however, the trial court instructed the clerk to stop reading the verdict once the clerk stated that the jury had allotted seventy-five percent of the negligence to Terry.

Petitioner appealed, arguing that the trial court erred in directing a verdict on the cause of action for attractive nuisance.[2] The court of appeals affirmed the trial court's decision; reasoning that because Terry was attracted onto IPC's property by a "dirt jumping hill" and not by the canal, Petitioner could not claim that the canal was an attractive nuisance. *Henson v. Int'l Paper Co.*, 358 S.C. 133, 139–40, 594 S.E.2d 499, 502 (Ct.App.2004). Additionally, the court of appeals held that any error in directing a verdict as to attractive nuisance was harmless because Petitioner retained causes of action for negligence and unguarded dangerous condition. *Id.*

---

1. These were the designations Petitioner used to identify the claims presented in the complaint. Also, Petitioner initially named IPC, Georgetown Steel Corporation, the city of Georgetown, and Georgetown County as defendants. By the time of trial, however, IPC was the sole defendant.

2. Petitioner also argued the jury's verdict was inconsistent on its face. This issue was not presented for our review.

This Court granted certiorari to review the court of appeals' decision, and Petitioner raises the following issues for review:

I.  Did the court of appeals err in reasoning that attractive nuisance requires the injured party to be attracted onto the defendant's property by the very temptation which causes injury?

II.  If the court of appeals erred in directing a verdict as to attractive nuisance, was the error harmless?

## LAW/ANALYSIS

### I. Elements of Attractive Nuisance

Petitioner argues that attractive nuisance should not require that the thing alleged to be the nuisance be the instrumentality which attracts a child onto the defendant's property. We agree.

Although the common law generally imposes no duty on a landowner to protect a trespasser from hidden dangers, *see Nettles v. Your Ice Co.*, 191 S.C. 429, 436, 4 S.E.2d 797, 799 (1939), consideration of the proclivities and instincts of children has long provided an exception to this point in premises liability. As this Court has stated:

> [O]ne who artificially creates upon his premises any dangerous thing which from its nature has a tendency to attract the childish instincts of children to play with it is bound, as a mere matter of social duty, to take such reasonable precautions as the circumstances admit of, to the end that they may be protected from injury while so playing with it, or coming in its vicinity.

*Franks v. S. Cotton Oil Co.*, 78 S.C. 10, 15, 58 S.E. 960, 961 (1907) (citing SEYMOUR D. THOMPSON, 1 COMMENTARIES ON THE LAW OF NEGLIGENCE IN ALL RELATIONS § 1024 (2d ed.1901) [hereinafter THOMPSON ON NEGLIGENCE] ). In South Carolina, this consideration of children's susceptibility to fail to perceive the risks of encountering dangerous instrumentalities or conditions has evolved into two exceptions to the common law's general preclusion of a trespasser's ability to maintain a cause of action for premises liability. These exceptions have commonly been termed "attractive nuisance" and "unguarded dangerous condition."

■ Attractive nuisance doctrine provides that where the owner or occupier of land brings or artificially creates something which, from its nature, is especially attractive to children, he is bound to take reasonable pains to see that the dangerous thing is so guarded that children will not be injured in coming into contact with it. *Franks,* 78 S.C. at 15, 58 S.E. at 961. South Carolina courts first recognized attractive nuisance in the "turntable cases." These cases held that infants could recover damages from railroad companies for injuries caused by the failure to lock or properly guard railroad turntables. *Bridger v. Asheville and Spartanburg R.R. Co.,* 25 S.C. 24 (1886).

At one time, the United States Supreme Court suggested that the dangerous condition or instrument must have attracted the child onto the defendant's property in order to hold a party liable under a theory of attractive nuisance. *United Zinc & Chem. Co. v. Britt,* 258 U.S. 268, 276, 42 S.Ct. 299, 66 L.Ed. 615 (1922).[3] Although the majority of our attractive nuisance jurisprudence pays little attention to the reasons for an injured child's presence on the property, IPC correctly argues that this concept, sometimes referred to as the "property line" rule, eventually crept into this Court's jurisprudence. *See Kirven v. Askins,* 253 S.C. 110, 117, 169 S.E.2d 139, 142 (1969); *Daniels v. Timmons,* 216 S.C. 539, 550–51, 59 S.E.2d 149, 155 (1950); and *Hancock v. Aiken Mills,* 180 S.C. 93, 104, 185 S.E. 188, 193 (1936). *See also Miller v. Perry,* 308 F.Supp. 863 (D.S.C.1970). This case requires us to determine whether this creeping was justified, and whether our jurisprudence should provide a home for the property line rule. We conclude that both answers are "no."

A close examination of the property line rule's origins is instructive. Because trespassers were generally barred from recovering from a landowner, attractive nuisance doctrine needed to either amend trespasser liability doctrine for children or create a status for these children other than that of a trespasser. Early case law in this area illustrates that courts solved this dilemma by providing that one who creates an

---

**3.** Of course, *Britt* addressed this issue as a matter of Kansas common law. The non-binding nature of the opinion, however, is not pivotal to its informativeness.

artificial condition on his land that is dangerous to children yet, at the same time, attracts them onto his land to "play in, swim in, or wade in" it, has granted a child an "implied license" to enter his property. *Miller,* 308 F.Supp. at 865; *see also Britt,* 258 U.S. at 276, 42 S.Ct. 299 (stating "[t]here can be no general duty on the part of a land-owner to keep his land safe for children, or even free from hidden dangers, if he has not directly or by implication invited or licensed them to come there."). Viewed through this lens, the property line rule appears justified given that a landowner cannot have extended an implied invitation to enter his property to the child who trespasses for a purpose other than to pursue amusement with the thing that ultimately causes him injury.

In South Carolina, however, the usefulness of this distinction is severely weakened after examining attractive nuisance's companion doctrine of unguarded dangerous condition. Quite unlike its counterpart, unguarded dangerous condition disregards the element of attraction; both to the property and to the danger. *See Everett v. White,* 245 S.C. 331, 335, 140 S.E.2d 582, 584 (1965) (providing that although an artificial condition may not have special attraction for children, when the condition is left so exposed that children are likely to come into contact with it, and where their coming into contact with it is dangerous to them, the person exposing the dangerous thing should anticipate the injury that is likely to happen and is bound to take reasonable pains to prevent it); *see also Franks,* 78 S.C. at 15, 58 S.E. at 961. Instead of justifying this exception on an implied license to enter another's land, we have recognized that liability in unguarded dangerous condition situations is based upon "a mere matter of social duty." *Franks,* 78 S.C. at 15, 58 S.E. at 961 (discussing both attractive nuisance and unguarded dangerous condition).

Though tort law often involves drawing seemingly arbitrary distinctions, it is said that judicial line drawing obligates a court to justify its choice. In this effort, we think recognizing the property line rule in attractive nuisance doctrine is intellectually inconsistent with allowing landowner liability under unguarded dangerous condition theory. In our view, it would be improper to anchor one of these companion theories in the fiction of an implied license, and ground the other in a social duty. As a matter of consistency, we find that these theories,

long-recognized as being closely related, are not grounded in traditional tort concepts. *See* THOMPSON ON NEGLIGENCE § 1042: OWNERS OF PROPERTY LEAVING DANGEROUS OBJECTS UNGUARDED, LIABLE TO TRESPASSING CHILDREN. Instead, these concepts rest on the consideration of the fact that the proclivities and instincts of young children sometimes lead them to seek amusement with artificially created conditions that can cause them serious injury.[4]

Although an analysis of precedent may, to some degree, seem unnecessary given that we have found recognition of the property line rule to be inadvisable as a matter of doctrinal consistency, an examination of this Court's premises liability jurisprudence reveals that while the property line rule has appeared in this Court's decisions with some frequency, it has never been faithfully applied. To exhibit this, we focus on the two cases relied upon directly by the court of appeals in the instant case.

In *Hancock v. Aiken Mills*, 180 S.C. 93, 185 S.E. 188 (1936), this Court reversed a damages award to a thirteen-year-old boy who sustained serious burns when he stood near a fire workmen built and watched the workmen as they repaired a neighboring home. Although the language of the property line rule appears in that case, the strongest justification for dismissing the suit was that the child admittedly did not encounter the fire due to a failure to appreciate its danger or a desire to play with it. *Id.* at 100, 185 S.E. at 191–92. We think the *Hancock* decision properly expresses considerable doubt as to whether a fire—with dangerousness apparent to even young children—could qualify as an attractive nuisance. *Id.* at 107, 185 S.E. at 194. Additionally, because the fire in *Hancock* was on land the plaintiff's family rented, *id.* at 95, 185 S.E. at 189, the property line rule would require dismissal on that ground alone.

---

4. We believe the movement away from an "implied license" rationale in these cases is likely responsible for the property line rule's declining popularity. *See* Eric R. Tonnsen, *Henson v. International Paper Co.: A Step Backwards in South Carolina Attractive Nuisance Jurisprudence*, 56 S.C. L.Rev. 835, 849–50 (2005) (discussing the rule's decline and the rising popularity of the RESTATEMENT (SECOND) OF TORTS: ARTIFICIAL CONDITIONS HIGHLY DANGEROUS TO TRESPASSING CHILDREN § 339 (1965)).

The second case relied upon by the court of appeals fares no better. In *Kirven v. Askins,* 253 S.C. 110, 169 S.E.2d 139 (1969), this Court affirmed a decision setting aside a jury verdict for a twelve-year-old child who sustained injuries to his eye as a result of being struck by a clod of dirt thrown by another child. Instead of disposing of the case based upon the reasons for the injured child's presence on the property, the Court relied primarily on a line of cases which held that similar construction materials were not inherently dangerous to children and that leaving these materials on a construction site did not create an unreasonably dangerous situation. *Id.* at 117, 169 S.E.2d at 142. Though the property line language undeniably appears in this opinion, the rule was of minimal relevance to the Court's holding.

■ In the instant case, both the trial court and the court of appeals understandably relied on our precedent in reaching their conclusions, but our examination has revealed that the property line rule has only haphazardly appeared and rarely, if ever, been applied in South Carolina. When this is coupled with the fact that we have held this rule cannot co-exist with other firmly-rooted aspects of our premises liability jurisprudence, any case that can be made in favor of adopting the property line rule is a slim one. The better view, in our opinion, is to reject the property line rule's rigid framework as inconsistent with the aforementioned quotation from *Franks,* which has long-served as the guiding principle in our attractive nuisance jurisprudence.

For these reasons, we hold the trial court erred in reasoning that attractive nuisance requires the injured child to be attracted onto the defendant's property by the very temptation which causes injury.

## II. Harmless Error

■ IPC argues that any error in striking the attractive nuisance cause of action was harmless. We agree.

An examination of the trial court's jury charges reveals that this must be so. In the instant case, the trial court charged the jury that a child is not required to conform to an adult standard of care, and that a child's conduct is judged by the standard of behavior to be expected of a child of similar age,

intelligence and experience. Furthermore, the court stated that a child may be so young as to be incapable of exercising the attention, perception, knowledge, experience, intelligence, and judgment which are necessary to enable the child to perceive a risk and to realize its unreasonable character. In other words, the trial court charged the jury that it should consider Terry's age, childish instincts, and proclivities in determining liability.

These charges captured the distinctive characteristics of an attractive nuisance claim. The trial court made no mention of the common law's general defense to a premises liability action brought by a trespasser. Instead, the trial court charged that IPC's conduct should be judged according to a negligence standard, and the jury received the instant case with instructions that the standard by which Terry's actions would be judged included consideration of Terry's age and his corresponding ability to understand and appreciate risks. Although the court did not identify these principles as attractive nuisance doctrine, the record reveals that the jury was nonetheless charged to consider this theory of liability.

Furthermore, the jury's verdict in favor of IPC ultimately precludes an award under an attractive nuisance theory. In addition to attractive nuisance, the jury in this case was charged on the law of unguarded dangerous condition. By allotting to Terry the majority of the fault for causing his injury, there is no reasonable interpretation of the verdict other than providing "however Terry came in contact with the canal, the canal was not an unreasonable danger to him." Like unguarded dangerous condition, attractive nuisance is premised upon the existence of a condition that poses an unreasonable danger to children. Without the necessary predicate of an unreasonably dangerous condition, recovery under an attractive nuisance theory was not possible.[5]

---

5. Petitioner strenuously argues that, although attractive nuisance and unguarded dangerous condition are companion theories, attractive nuisance creates a higher standard of care for a landowner. We believe this argument is resoundingly rejected by our precedent, *see Daniels,* 216 S.C. at 550–51, 59 S.E.2d at 155 (stating that attractive nuisance cases spring from the negligence of the defendant landowner in regard to his or her property which is subject to being entered upon by children); *see also Bridger,* 25 S.C. at 25–28 (stating that the turntable

The instant case presents a ripe opportunity to provide some much needed clarity in this area of the law. Though Petitioner's complaint, likely taking its cue from our case law, offered "negligence, attractive nuisance, and unguarded dangerous condition" as separate and distinct causes of action, we find this presentation to be not entirely accurate. Negligence refers to a standard of care, and to be actionable, negligence requires a duty running from the alleged tortfeasor to the injured party. In this case, Petitioner sought to hold IPC liable for neglecting its duty to protect Terry, a child trespasser, on IPC's premises.

■ The cause of action in these cases is a claim for premises liability. Relying on the social duty to protect children from dangers of which they, through their childish instincts, are unlikely to become aware, courts created the doctrines of attractive nuisance and unguarded dangerous condition as exceptions to the general rule that there is typically no cause of action when a trespasser is injured by a dangerous condition on another's land.[6] Although the importance lies in the legal standards created and not necessarily in the nomenclature, this clarification should aid lower courts in applying the principles we have set forth in this decision.

■ In that same vein, we believe that by recognizing a duty to protect children from dangers to which they will not be attracted, and by disregarding the element of the child's attraction onto a landowner's property, any significant distinction between attractive nuisance and unguarded dangerous condition has outlived its usefulness. We think the better

cases arise out of the negligence of railroad companies in leaving their turntables unlocked or unprotected, and further defining negligence as the absence of due care). Furthermore, we decline to read "reasonable pains" to provide a "negligence plus" standard in one context and a simple negligence standard in another. *Compare Everett,* 245 S.C. at 335, 140 S.E.2d at 584 (discussing the duty to take reasonable pains to protect children from an unguarded dangerous condition), *with Franks,* 78 S.C. at 15, 58 S.E. at 961 (discussing the landowner's duty to take reasonable pains to prevent injury to children in attractive nuisance cases).

6. We reiterate that these exceptions apply only in cases involving artificially created dangerous conditions. *See Byrd v. Melton,* 259 S.C. 271, 276, 191 S.E.2d 515, 517 (1972).

view is that there is but a single exception to the trespasser's rule in premises liability suits: dangerous conditions that injure children. This view is consistent with the Restatement (Second) § 339, which has been widely accepted in this area. The section provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

RESTATEMENT (SECOND) OF TORTS § 339 (1965).

■ We find the Restatement to be a succinct and effective presentation of the considerations which courts should weigh in deciding these cases. Accordingly, as it is this Court's duty to declare the common law of South Carolina, *see Russo v. Sutton*, 310 S.C. 200, 204, 422 S.E.2d 750, 753 (1992), we adopt Restatement (Second) § 339 and hold that future premises liability cases brought by or on behalf of child trespassers should be decided in accordance with the principles outlined in that section.[7]

---

7. As a final point of instruction, we specify that where a landowner defines the borders of his property or of an artificial condition on his property by fence or other barrier, and such fence or barrier is of a type that should reasonably be expected to exclude children or to place children on notice that their presence is not welcome, recovery for injuries to child trespassers should generally be precluded.

## CONCLUSION

For the foregoing reasons, we modify the court of appeals' decision, and affirm.

MOORE, WALLER, BURNETT, JJ., and Acting Justice HOWARD P. KING, concur.